438 So.2d 1319 (1983)
STATE of Louisiana
v.
Jarvis Dale CHAPMAN.
No. K83-432.
Court of Appeal of Louisiana, Third Circuit.
October 12, 1983.
*1321 Stewart Thomas, Jennings, Charles L. Bull, Jr., Welsh, for defendant-respondent.
W. Gregory Arnette, Jr., Dist. Atty., W.J. Riley, III, Asst. Dist. Atty., Jennings, for plaintiff-relator.
Before DOMENGEAUX, FORET and YELVERTON, JJ.

ON WRIT OF CERTIORARI
FORET, Judge.
We granted this writ of certiorari upon application of the State of Louisiana, to review the trial court's granting a new trial upon motion of a jury-convicted defendant. The major issue involved is what role does the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), play in a motion for new trial.

FACTS
On the evening of October 5, 1981, the defendant, Jarvis Dale Chapman, entered the rear portion of a religious revival tent located in the community of Topsy, Louisiana. This particular portion of the tent was concealed from the view of the congregation by means of a curtain. Once inside the tent, the defendant killed the Reverend W.O. Bowman with one shot from a .38 caliber derringer. After the firing of the shot, several members of the congregation went to the portion of the tent where the shooting had taken place and apprehended the defendant. He was later indicted by grand jury for second degree murder in violation of LSA-R.S. 14:30.1 on October 19, 1981.
At arraignment, defendant pleaded not guilty and not guilty by reason of insanity. A sanity commission was appointed, consisting of Dr. David B. Regan and Dr. Young Kang. After considering the report of the sanity commission, on January 18, 1982, the court found that defendant was not competent to stand trial. He was then committed to the forensic unit of the East Feliciana Forensic Facility where he remained until the staff found him capable to stand trial, in July of 1982.
The only issue at trial was the sanity of the defendant at the time of commission of the crime. A unanimous jury of twelve felt he was sane and found him guilty as charged. On July 23, 1982, defendant filed a motion for new trial and that motion was granted on March 11, 1983.
The State of Louisiana has taken writs to challenge the trial court's granting of defendant's motion and bases its argument on three assignments of error. We shall consider the first and third assignments first.

ASSIGNMENT OF ERROR NUMBER 1
By this assignment, the State contends that the trial court granted defendant's motion *1322 for new trial without first holding a contradictory hearing as required by LSA-C.Cr.P. Article 852. This article provides:
"A motion for a new trial shall be in writing, shall state the grounds upon which it is based, and shall be tried contradictorily with the district attorney."
The Official Revision Comment, paragraph (b) provides, in pertinent part:
"... The district attorney can be fully protected by the court's granting of additional time to prepare to meet a surprise ground that is asserted by the defendant...."
The record shows that on July 23, 1982, prior to sentencing, defendant filed a written motion for new trial and the grounds upon which it was based. Both sides were present in court when the motion was made and both were given an opportunity to present their arguments. At no time did the District Attorney move to present evidence in opposition to the motion nor did he request any additional time to present a defense, even though the trial court took the motion under advisement and did not rule on it until March 11, 1983, some eight months after the initial filing by defendant. Where the minutes reflect that a motion for a new trial has been heard and argued by both sides, and no request for additional time made, then the requirements of LSA-C.Cr.P. Article 852 are met. State v. Zeno, 322 So.2d 136 (La.1975). This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 3
By this assignment, the State contends that the trial court committed error in granting the motion for new trial because the effect of this ruling would be to usurp the fact-finding power of the jury by substituting the judge's own opinion in place of the jury's. This assignment is without merit. There is no doubt that a trial judge, under LSA-C.Cr.P. Article 851(1) and (5), has the power to do exactly what he did. To accept the State's argument would be to effectively repeal these sections of the article.

ASSIGNMENT OF ERROR NUMBER 2
By this assignment, the State contends that the trial judge committed error of law in not applying the Jackson standard[1] in deciding whether to grant defendant's motion for new trial. Simply stated, the question under Jackson is whether any rational fact-finder, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime proved beyond a reasonable doubt. The State feels that the error occurred because the trial court did not view the evidence in the light most favorable to the prosecution.
Defendant's motion was based on the grounds that the verdict was contrary to the law and the evidence and that the ends of justice would be served by the granting of a new trial. LSA-C.Cr.P. Article 851(1) and (5)[2]. Under Article 851(1), it is the duty of the trial judge to determine if the evidence is sufficient to support the verdict. State v. Daspit, 167 La. 53, 118 So. 690 (1928); State v. Rollins, 351 So.2d 470 (La.1977). Where a trial judge grants a motion for a new trial on the grounds that the evidence is legally insufficient to support the jury's guilty verdict, the double jeopardy clause of the United States Constitution prevents the defendant from being retried on the same charge. Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). Because of the power granted to the trial judge under Article 851(1) and considering that power in light of the Hudson decision, this Court feels that the same principles should be applicable whether there is a motion for a new trial *1323 based on insufficiency of the evidence or a review of the case at the appellate level. State v. Hudson, 373 So.2d 1294 (La.1979), at 1297. We therefore hold the Jackson standard is applicable in a motion for new trial based on the grounds that there is insufficient evidence to support the conviction. State v. Brown, 421 So.2d 854 (La. 1982), at 858[3].
The rule set forth above applies equally in a case, such as the one at bar, where the issue is the sanity of the defendant. In Louisiana, an adult defendant is presumed to be sane, and if he wishes to rebut this presumption, he must prove by a preponderance of the evidence that he was insane at the time of the offense. LSA-R.S. 15:432; LSA-C.Cr.P. Article 652. Our holding here does not affect the defendant's burden. We simply mean that the test to be applied by a trial judge in deciding on a motion for a new trial based on insufficiency of the evidence where the issue is the sanity of the defendant, is whether "a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could not have concluded that the defendant had failed to prove by a preponderance of the evidence that he was insane at the time of the offense". See State v. Roy, supra, at 669[4].
When, however, a motion for new trial is based not on insufficiency of evidence to support a conviction but rather on other grounds enumerated under Article 851, we agree with defendant's contention that the Jackson standard is not applicable. In other words, the Jackson standard is to be used by a trial court on a motion for a new trial only if the grounds are based on insufficient evidence to support a conviction under LSA-C.Cr.P. Article 851(1). This is not to imply that a judge is precluded from granting a new trial under Article 851(1) when he feels that although the evidence may be sufficient to support a conviction, in his opinion the verdict is still contrary to the law and evidence. In that case, the trial judge sits essentially as a thirteenth juror, much like he does when he grants a motion for new trial based on the grounds that the ends of justice would be served thereby under LSA-C.Cr.P. Article 851(5). See Justice Tate's concurrence in State v. Hudson, supra, at 1298. See also Hudson v. Louisiana, supra, 101 S.Ct., at 973, footnote 5. In the exercise of his discretion as a thirteenth juror under Article 851(1) or (5), a trial judge is given wide discretion and his decision will not be disturbed on review in the absence of clear abuse. Official Revision Comment, LSA-C.Cr.P. Article 851(d); State v. Rollins, supra, at 472.
In the case at bar, it is unclear from the record what standard or what reasons the trial court used in granting the motion for new trial. It appears that the judge may have felt that the evidence was insufficient to convict. He states:
"... The lay testimony and the expert testimony lead this Court to believe that Chapman was legally insane within the meaning of Louisiana law and the Court further believes that no rational trier of fact could conclude otherwise."
He did not indicate, however, if he viewed the evidence in the light most favorable to the prosecution as required by Jackson, and indicated at the July 23 hearing that he had doubts as to whether Jackson was the correct standard to be applied.
The trial court also stated that:

*1324 "To avoid injustice, this court will grant defendant's motion."
Thus, the judge may have ruled on the motion in his capacity as a thirteenth juror under 851(1) or 851(5) and therefore the Jackson standard would not apply.
Therefore, because of our inability to determine exactly what standard and reasons the trial court applied, the case shall be remanded to the trial court for further clarification on whether the ruling was based on his finding the evidence insufficient to convict under 851(1) or in his capacity as a thirteenth juror under 851(1) or 851(5). If he acted as a thirteenth juror and simply disagreed with the jury verdict, then the defendant shall be retried. If he applied Jackson and found the evidence insufficient, then Hudson v. Louisiana, supra, prevents retrial and the defendant shall be acquitted. If he found the evidence insufficient but did not view the evidence in the light most favorable to the prosecution as required by Jackson, then there was error of law and the motion must be reconsidered.

DECREE
We, therefore, remand this case to the trial court for further proceedings not inconsistent with this opinion.
REMANDED WITH INSTRUCTIONS.
DOMENGEAUX, J., concurs in part and dissents in part and assigns reasons.
DOMENGEAUX, Judge, concurring in part and dissenting in part.
I concur with the majority's treatment of Assignment of Error No. 1, wherein the State alleges that a contradictory hearing was not held as required by Louisiana Code of Criminal Procedure Article 852. I agree that this assignment is without merit. Beyond that however, I respectfully suggest that the majority opinion is grievously erroneous.
In Assignments of Error Nos. 2 and 3, the State contends that the trial judge committed error of law by applying an incorrect standard of review in deciding whether to grant defendant's motion for a new trial. More specifically, the State argues that the trial court did not view the evidence in the light most favorable to the prosecution under the standard mandated by the United States Supreme Court in Jackson v. Virginia,[1] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[2] The State also contends the trial judge committed error of law by determining the defendant's sanity at the time of the offense contrary to the jury verdict.
Defendant's motion was based on the grounds that the verdict was contrary to the law and the evidence and that the ends of justice would be served by the granting of a new trial. La.C.Cr.P. Art. 851(1) and (5).[3] Under Article 851(1), it is the duty of the trial judge to determine if the evidence is sufficient to support the verdict. State v. Daspit, 167 La. 53, 118 So. 690 (1928); State *1325 v. Rollins, 351 So.2d 470 (La.1977).[4] The Jackson standard is applicable in a motion for a new trial based on the grounds that there is insufficient evidence to support the conviction. State v. Brown, 421 So.2d 854, 858 (La.1982); White v. Estelle, 669 F.2d 973 (5th Cir.1982). As set forth in White v. Estelle:
"The Jackson standard accommodates both the constitutionally compelled burden of proof under state law (proof beyond a reasonable doubt) and the presumption of correctness due jury verdicts generally."
At 976.
Following the rationale of White v. Estelle, I find that the judge's ruling is subject to review. Under La.C.Cr.P. Art. 851(5), the trial judge has plenary authority to order a new trial to do justice, even when the motion is not based on a strictly legal ground. State v. Toomer, 395 So.2d 1320 (La.1981). The ruling on a motion for a new trial is committed to the sound discretion of the trial judge. The ruling will be disturbed on appeal only when there is a clear showing of abuse of this discretion. State v. Fuller, 414 So.2d 306 (La.1982).
It is noted that when a motion for new trial is based on the supposition that the ends of justice will be better served by granting it, unless an injustice has been done to the defendant and shown to have been the case, that motion will be denied no matter what allegations it is grounded on. Such a motion is not favored by law. State v. Vinet, 352 So.2d 684 (La.1977). Further, in situations in which discretion is inappropriate, an incorrect decision is not entitled to deference (which is usually accorded to the trial court's reasonable decision in a situation calling for discretion when resolving a new trial motion). State v. Talbot, 408 So.2d 861 (La.1981).
Although there exists a line of jurisprudence which holds that a trial judge's ruling which grants a motion for a new trial based upon La.C.Cr.P. Art. 851(5) presents nothing for appellate review, these cases were decided before the standard of review announced in Jackson v. Virginia became applicable. See State v. Matthews, 354 So.2d 552 (La.1978). Accordingly, the standard must be one appropriate to a Jackson -type review, i.e. a second-tier review. In applying the Jackson standard, I find that the trial judge committed error in granting the motion for a new trial under La.C.Cr.P. Art. 851.
The trial judge stated in granting defendant's motion for a new trial that "... the lay testimony and the expert testimony leave this court to believe that Chapman was legally insane within the meaning of Louisiana law and the court further believes that no rational trier of fact could conclude otherwise. To avoid injustice, this Court will grant defendant's motion." In an attempt to paraphrase the standard of review announced in Jackson v. Virginia, the trial judge omitted one crucial factor of the test, i.e., all the evidence must be considered in the light most favorable to the State. Also, the trial judge speculated upon the reasoning process he thought the jury used to reach its decision. Further, the trial judge gratuitously stated that the jury verdict was wrong generally because it was influenced by the public disfavor of the insanity defense, and particularly because it was a reaction to the attempted assassination of President Reagan and the shooting death of singer John Lennon. The trial judge is not permitted to make a subjective determination of defendant's guilt or innocence, nor is it within the province of the trial judge to scrutinize the reasoning process which the jury engaged in to make its determination. The trial judge was required to consider the sufficiency of the evidence upon defendant's motion in the light most favorable to the prosecution.
At trial, several members of defendant's family testified. The testimony concerned *1326 past episodes relating to defendant, defendant's childhood behavior and recent behavior, defendant's employment history, and the series of events which culminated in the shooting death of the Reverend Bowman.
Rev. John C. Hair, defendant's pastor, testified at trial.[5] He and his wife had visited defendant pending trial at defendant's request. Defendant disclosed to Rev. and Mrs. Hair that he knew it was wrong to kill Reverend Bowman and that he wanted to tell the truth, but he was afraid that this would result in his being sent to Angola.
John Hamilton, defendant's closest friend, testified at trial that on the day of the murder, defendant attempted to engage his help in the commission of the crime. Defendant asked to use Hamilton's gun and also wanted Hamilton to act as a lookout. When Hamilton refused, defendant stated: "If you ain't gonna help me, I done said too much."
Rev. Albert Lyle, another Pentecostal minister, stated that immediately after Reverend Bowman was shot, when defendant was asked the reason for the incident, defendant's only reply was: "I want my lawyer."
Of the family members, only defendant's mother gave testimony which indicated that defendant might have experienced difficulty in coping with everyday problems. Mrs. Chapman testified that defendant was fearful, dependent, and withdrawn. She also stated that defendant once told her he had no reason to live anymore. However, each of the other relatives and friends expressed the opinion that defendant outwardly did not seem disturbed or abnormal. The overall concensus reached by these witnesses was merely that defendant kept to himself, did not participate in family activities, and relinquished his religious practices.
The only expert witness to testify was Doctor Regan, who qualified as a psychiatrist specializing in forensic medicine. The doctor examined defendant on several occasions, totalling seven hours of psychiatric analysis. Doctor Regan also conducted "interviews" with defendant's parents in order to gather a complete medical history of defendant. The psychiatrist did not, however, obtain any information from anyone else associated with defendant. From this information, Doctor Regan concluded that defendant was suffering from chronic schizophrenia, paranoid type, which prevented defendant in distinguishing between right and wrong at the time of the offense under the elements of the M'Naughten test.[6] On cross-examination by the State, Doctor Regan admitted that his determination might be incorrect. He also admitted that there existed the possibility that defendant lied about his delusions, faked psychosis, and that defendant actually knew at the time of the crime that his actions were "morally" wrong. Upon further questioning by the State, Doctor Regan also revealed that shortly after defendant shot the Reverend Bowman he appreciated the wrongness of his actions, so that his period of insanity, i.e. the inability to discern right from wrong, lasted for only several minutes (from the time defendant crossed the street to the revival tent until he fired the gun).
The jury had the opportunity to hear and consider all the evidence presented. In this case, the jury exercised its function by drawing conclusions from the evidence, granting credence to certain testimony, and then determining the defendant's guilt, implicitly finding the defendant sane, i.e., defendant knew that his actions were wrong when he shot Reverend Bowman. From this verdict, it is apparent that the jury was not persuaded by the lay or expert testimony *1327 rendered on behalf of the defendant to establish his insanity plea. It is also clear that the jury was convinced beyond a reasonable doubt that defendant was fully aware that it was wrong to shoot Reverend Bowman.
In reviewing the record, I find that the jury believed that the State produced sufficient evidence to prove guilt beyond a reasonable doubt; and that the jury found that the defendant failed to sustain the burden of proving insanity at the time of the homicide; so that the jury, acting as a rational trier of fact and viewing the evidence in the light most favorable to the State, could have found the essential elements proved beyond a reasonable doubt. The cogency of the jury's findings and the conclusive weight given to it is set forth by the Louisiana Supreme Court in State v. Abercrombie, 375 So.2d 1170 (La.1979):
"Applying this test, we have little difficulty in finding that the evidence overwhelmingly supports a determination that, due to the accused's severe paranoid schizophrenia, he was irresistibly compelled to accept the perceived direction of the higher beings who he felt controlled him by reason of which he did not know that it was morally wrong to kill the victim.
On the other hand, the expert evidence also admitted that the accused knew it was `humanly wrong,' being illegal, to kill another human being.
The difficulty is that the M'Naughten test of legal insanity, i.e., being capable of distinguishing between right and wrong with regard to the conduct in question, is not in origin or application a medical or scientific concept. The testimony and opinion of medical experts are almost essential for determining whether a mental disease or defect affected the defendant's conduct, and they also have weight in the decision whether because of this mental condition (as required) the accused could not distinguish between `right' and `wrong'.
However, in the last analysis, it is rather a question of law than of medicine as to what the cognizable `wrong' is; a legal rather than a medical question is presented by the issue of whether an accused is legally insane who knows it is legally wrong to kill another human being, but who does not know it is morally wrong (being under a delusion or compulsion produced by severe mental disease). Indeed, the predominant practice in American jurisdictions seems without discussion to leave it to the factual determination of the trial jury to determine whether the defendant was capable of knowing right from `wrong' with regard to the conduct complained of, without specifying as a matter of law whether the defendant must know it to be `morally' or instead `legally' wrong. LaFave and Scott, Criminal Law 278-279 (1972). The jury is thus free to exculpate for legal insanity on either basis, providing that the inability to know is a product of a mental disease or defect." (Emphasis added).
At 1178.
In the instant case, the jury evaluated all the evidence at trial and determined that the evidence supported a verdict of second degree murder. While the trial judge has great discretion under the power accorded to him by La.C.Cr.P. Art. 851(1), I feel that there has been an abuse of that discretion. The trial judge interposed his opinion and supplanted the jury's verdict even though there was sufficient evidence to convict defendant. The unanimous vote returned by the jury found defendant sane and guilty as charged based upon testimony by those expert and lay witnesses presented at trial. State v. Poree, 386 So.2d 1331 (La.1980). With reference to the jury's verdict, I think that the trial judge, in granting defendant's motion for a new trial, failed to consider all of the evidence in the light most favorable to the prosecution by relying almost exclusively on the psychiatrist's testimony, despite Doctor Regan's equivocation as to several critical aspects of the sanity issue. See State v. Abercrombie, at 1177.
Further, I conclude that the trial judge committed manifest error by finding defendant legally insane under Louisiana law. *1328 "When the defendant pleads `not guilty and not guilty by reason of insanity' the court is prohibited from determining the defendant's sanity at the time of the offense; this question is reserved for the jury." The burden is on the defendant to prove his insanity, codified by La.C.Cr.P. Art. 652. State v. Link, 301 So.2d 339 (La.1974); State v. Sonnier, 379 So.2d 1336 (La.1979). The trial judge did not have the authority under La.C.Cr.P. 851(1) to usurp the fact-finding power of the jury simply because, in his opinion, the defendant was insane.
"This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon `jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law."

Jackson v. Virginia, at 319, 99 S.Ct., at 2789.
I determine that the jury's verdict in no way violated defendant's fundamental due process protection.
It is my opinion that the trial judge also abused his discretion by basing his ruling upon the rationale used by the jury to reach a verdict.
"The question whether the evidence is constitutionally sufficient is of course wholly unrelated to the question of how rationally the verdict was actually reached. Just as the standard announced today does not permit a court to make its own subjective determination of guilt or innocence, it does not require scrutiny of the reasoning process actually used by the factfinderif known. * * *"

Jackson v. Virginia, at 319, n. 13, 99 S.Ct., at 2789, n. 13.
Because the abuse of discretion amounts to error of law, I would find it necessary to set aside the trial judge's ruling which granted defendant a new trial, State v. Credeur, 328 So.2d 59 (La.1976), and order the verdict of the trial jury reinstated.
For the above and foregoing reasons, I respectfully dissent from the portion of the majority opinion which remands the case to the trial court for further proceedings.
NOTES
[1] Jackson v. Virginia, supra. This standard of appellate review has been adopted in Louisiana. State v. Claibon, 395 So.2d 770 (La.1981); State v. Roy, 395 So.2d 664 (La.1981).
[2] LSA-C.Cr.P. Article 851(1) and (5) provide that a motion for new trial shall be granted whenever,

"(1) The verdict is contrary to the law and the evidence;
. . . . .
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
[3] Defendant's able brief seeks to differentiate between a motion for new trial and a review of a case on appeal and maintains that different standards should be applied for the two. He states:

"... Granting a reversal based on Jackson is a final resolution of the case that precludes further prosecution. Granting a motion for a new trial is not." (Defendant's brief, page 6.)
According to Hudson v. Louisiana, supra, this argument is simply incorrect when a trial judge grants the motion based on insufficiency of evidence; in that case, since the trial court acts essentially as an appellate court, we feel the standard used by the appellate courts should also govern the trial court.
[4] We note that whenever the trial judge determines that a rational fact finder could not have concluded that the defendant did not carry his burden, then the defendant must be acquitted, not retried. Any confusion on this issue which remained after the Roy decision is now cleared up by the U.S. Supreme Court's ruling in Hudson v. Louisiana, supra.
[1] This standard of review has been adopted in Louisiana. See generally State v. Claibon, 395 So.2d 770 (La.1981); State v. Roy, 395 So.2d 664 (La.1981). Under Jackson, the reviewing court must "determine whether the record evidence could reasonably support a finding of guilty beyond a reasonable doubt." 443 U.S. at 318, 99 S.Ct. at 2788. The requisite test is whether any rational fact finder, viewing the evidence in the light most favorable to the prosecution could have found the essential elements of the offense proved beyond a reasonable doubt. State v. Mathews, 375 So.2d 1165 (La.1979).
[2] Although reviewing courts are obligated to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this concurring and dissenting opinion has expressed opposition to this standard because it relegates the reviewing power of the appellate courts to nothing more than "second-guesswork" of the triers of fact. See State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983), concurring opinion, and cases cited therein.
[3] La.C.Cr.P. Art. 851(1) and (5) provide:

"(1) The verdict is contrary to the law and the evidence;
* * * * * *
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
[4] When a trial judge grants a motion for new trial on the grounds that the evidence is legally insufficient to support the jury's guilty verdict, the double jeopardy clause of the United States Constitution prevents the defendant from being retried on the same charge. Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).
[5] During the trial it was determined by this Court upon emergency writ application filed by the State that these oral inculpatory statements were not privileged communications between clergyman and penitent under La.R.S. 15:477.
[6] The origin of the insanity rule is McNaughten's Case, 1 Car. & K. 130 (1843). The test has been adopted in Louisiana, in La.R.S. 14:14, which provides: 
"If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility."