440 So.2d 1330 (1983)
STATE of Louisiana
v.
Jack R. ALLEN.
No. 82-KA-1505.
Supreme Court of Louisiana.
October 17, 1983.
*1331 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Ronald Loumiet, Patrick C. Leitz, David C. Loeb, Stephen T. Wimberly and William C. Credo, III, Asst. Dist. Attys., for plaintiff-appellee.
Ronald P. Herman, Metairie, for defendant-appellant.
DIXON, Chief Justice.
Defendant Jack R. Allen was indicted for negligent homicide, a violation of R.S. 14:32. Defendant was found guilty as charged and now appeals this conviction.
On October 23, 1980 Jack Allen and his business partner arrived at the Pier 90 Restaurant and Bar at approximately 4:00 p.m. to make some business telephone calls. Allen's partner left at about 9:00 p.m. and Allen remained until approximately 3:00 a.m. Defendant stated that he consumed *1332 four or five beers and one glass of creme de menthe during this time, but that he did not have any alcoholic beverages after 11:00 p.m.
Upon leaving Pier 90, defendant drove his pickup truck eastbound down Lapalco Boulevard. At the same time, Mark Page was driving his Toyota automobile westbound on Lapalco Boulevard. Just past the intersection of Lapalco Boulevard and East Drive the two vehicles collided. According to the accident investigation and reconstruction expert, defendant's truck traversed into the oncoming lane and hit Page's car head-on.
Defendant testified that he saw oncoming headlights which he believed were in his lane and he tried to swerve. Page, the other driver, was pronounced dead on arrival at a local hospital from multiple injuries. Defendant was arrested at the accident scene by Officer Dufrene.
Dufrene testified that his initial observation of Allen indicated intoxication. He observed that the defendant was "unbalanced. He swayed a bit." His eyes were "glassysomewhat bloodshot." After placing defendant under arrest, Dufrene read the Miranda rights to him and asked if he would submit to a photoelectric intoximeter test. Defendant agreed.
Dufrene transported defendant to a correctional center for booking and testing. Defendant was again advised of his rights and advised of the consequences of refusing to take the test. At this time, the defendant refused to take the test and refused to sign the form indicating his refusal to take the test. Defendant did consent to take the field sobriety test, but was unable to perform the maneuvers satisfactorily.
Allen testified that he had been up for almost twenty-four hours at the time of the accident, and that his staggering and swaying were a result of the accident. He also blamed the accident for his poor performance on the sobriety test. The defense argued that the victim entered a curve in the roadway too quickly and crossed over the center line, causing defendant to swerve. When the victim corrected his swerve, he hit defendant head-on in the victim's original lane.

Assignments of Error Nos. 1 and 5
Defendant contends that the trial court erred in denying his motions for a directed verdict of acquittal and for a new trial.
Directed verdicts upon the state's completion of its case in chief cannot be entered in jury trials, but only in bench trials. C.Cr.P. 778. The correct vehicle for asserting defendant's argument that the state failed to prove an essential element of the crime is the motion for a post verdict judgment of acquittal, C.Cr.P. 821, or the motion for a new trial, C.Cr.P. 851.
Defendant argues that the state's failure to prove driving while intoxicated constituted a failure to prove criminal negligence, an essential element of the crime of negligent homicide, and that defendant is entitled to a new trial. Defendant's argument is not persuasive. Violation of a statute or ordinance is not the only means of proving criminal negligence, and is, in fact, only presumptive evidence of such negligence. R.S. 14:32.[1] The entirety of the evidence presented by the state must be considered. State v. Hargrave, 411 So.2d 1058, 1062 (La.1982).
"... In order to convict a defendant of negligent homicide, however, the state must prove (1) that defendant was criminally negligent, i.e., that there was such *1333 disregard of the interest of others that the offender's conduct amounted to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances; and (2) that a killing resulted from this conduct...." State v. Fontenot, 408 So.2d 919, 921 (La.1981).
The standard of review, as set forth by the United States Supreme Court and adopted by this court, is whether "upon the record adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Johnson, 426 So.2d 95, 101 (La.1983).
To prove criminal negligence, the state's evidence included Officer Dufrene's observations; defendant's admission to having consumed four or five beers and at least one glass of liqueur; defendant's admission to having been awake for almost twenty-four hours prior to the accident; defendant's poor performance in the field sobriety test; and the fact that the accident occurred in the westbound lane, requiring that defendant's vehicle cross the center line to collide with the victim's vehicle.
Although defendant attempted to show that his post accident dazed condition and reactions were caused by the collision and resulting injuries, he did not seek medical assistance. The jury chose to believe the evidence presented by the state.
There is no question that "a killing resulted from this conduct." State v. Fontenot, supra at 921. The state presented sufficient evidence at trial to allow a rational trier of fact to find proof of guilt beyond a reasonable doubt. The motion for a new trial was properly denied.

Assignment of Error No. 2
Defendant contends that the trial court erred in admitting into evidence the defendant's refusal to take the photoelectric intoximeter test. Defendant claims that he did not understand the warnings concerning his rights because of his head injuries and could not intelligently waive his rights. We note that defendant exercised his right to refuse to take the intoximeter test and refused to sign any forms until he had a lawyer present.
No waiver of rights is involved. Defendant's Fifth Amendment privilege cannot be used to bar the nontestimonial blood test. South Dakota v. Neville, ___ U.S. ___, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983); Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966). The Louisiana statute permits an accused to refuse the test and requires that the defendant be advised of the consequences of such refusal, but it is not necessary to give Miranda warnings before administering chemical testing. State v. Hargrave, supra; State v. Badon, 401 So.2d 1178 (La.1981). The officer correctly informed the defendant of his right to refuse, and of the consequences of his refusal. It is not error that the officer erroneously informed defendant that he could lose his vehicle registration for refusing to take the test. State v. Spence, 418 So.2d 583, 586 (La.1982).
Defendant claims that the officer failed to comply with the procedures of R.S. 32:667 in that he did not submit a sworn statement to the Department of Public Safety stating that he had reasonable grounds to believe the arrested person was under the influence of alcoholic beverages so that that department could suspend the defendant's license. The suspension would allow defendant an administrative hearing and a pretrial opportunity to rebut testimony of intoxication. Defendant argues that he was denied due process.
The consequence of the officer's failure to file the sworn statement is that the defendant's license will not be revoked under that section of the law. No advantage was lost to the defendant by the absence of this administrative hearing. Defendant's right to challenge the introduction of evidence of his refusal to take the test is not abridged. Any issues raised in this hearing could be raised at a criminal trial.
*1334 Defendant claims, lastly, that the forms used by police officers when requesting that a person take an intoxication test are "incomplete, vague, improper and written in a manner which induces coercion and duress."
The form is not incomplete or vague because it lacks reference to appellate review, administrative hearings or limited driving privileges. The form is designed to relate only to the taking or refusal to take the intoxication test. In conformance with R.S. 32:661 C, the form advises of the constitutional rights and of the consequences of refusal to submit to a chemical test. It is required to go no further.
The form is not improper because it "requires" a chemical test. By law, "any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent ... to a chemical test ..." R.S. 32:661 A. Defendant was required to take the test and realized the consequences of his refusal.
The form is not coercive or disparaging of constitutional rights. Defendant was well aware of and exercised his constitutional right to a lawyer, and was not coerced into consenting to the testing. He, in fact, did not consent to the testing. The Fifth Amendment protection against self-incrimination does not protect against chemical testing for intoxication. State v. Hargrave, supra.

Assignment of Error No. 3
Defendant contends that administration of the field sobriety test is an illegal search because the legislature has not validly delegated this responsibility to police officers. He argues that R.S. 32:661 et seq. authorizing chemical testing preempts the area of intoxication testing.
When enacting R.S. 32:661 et seq., the legislature did not intend that this procedure be the exclusive evidence of intoxication. R.S. 32:662 C states: "The foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was under the influence of alcoholic beverages."
This court has indicated that "[i]ntoxication, with its attendant behavioral manifestations, is an observable condition about which a witness may testify." State v. Spence, supra at 589; State v. Badon, supra at 1179; State v. Neal, 321 So.2d 497, 500 (La.1975).
In conducting the field sobriety test, Officer Dufrene was gathering evidence as an observer of coordination. Gathering evidence is not an exclusive function of the legislature.
The ultimate decision of whether or not the defendant was intoxicated rests with the fact finder. The court did not err in admitting evidence of the field sobriety test.

Assignment of Error No. 4
The defendant contends that the trial court erred in denying the defendant the opportunity to fully cross-examine the victim's mother, a witness for the prosecution. Defendant sought to elicit from the witness that the victim's estranged wife filed a civil action for damages in the amount of $1,000,000 as a consequence of this accident.
The trial court has wide discretion in determining the relevancy of evidence and its determination will not be overturned absent a clear abuse of discretion. State v. Huizar, 414 So.2d 741, 748 (La.1982); State v. West, 419 So.2d 868, 876 (La.1982). Error, if made by the trial court, is not fatal unless the defendant demonstrates prejudice. State v. Humphrey, 412 So.2d 507, 516 (La.1981).
Defendant's proffer does not convince us that the evidence he sought to elicit would tend to show or negate the commission of the offense. R.S. 15:441. The trial court did not err in refusing to allow the cross-examination. It is questionable whether the witness would be competent to testify as to the details of a lawsuit to which she is not a party. The defendant *1335 has not shown that he has been prejudiced by the trial court's ruling.
Defendant's assignments of error lack merit.
Accordingly, defendant's conviction and sentence are affirmed.
LEMMON, J., concurs and will assign reasons.
LEMMON, Justice, concurring.
Subscribing to the decision of the court, I add these concurring reasons in an attempt to clarify a very important, but very confused, aspect of Louisiana criminal procedure: the proper test to be applied by a trial judge in deciding whether to grant a new trial or a judgment of acquittal when confronted with a post-trial motion challenging the sufficiency of the evidence.
In 1975, the Legislature amended La.C. Cr.P. Art. 778 to delete the provision providing for a directed verdict of acquittal in jury trials, thereby eliminating the trial court's authority to refuse to submit the case to the jury when the evidence was not legally sufficient to support a conviction.[1] See Acts 1975, No. 527. This court subsequently permitted the issue of legal sufficiency of evidence to be presented to the trial court by a postverdict motion for new trial alleging the "total lack of evidence". See State v. Winzer, 354 So.2d 533 (La. 1978).
Even after the United States Supreme Court mandated the rational juror standard for determining sufficiency in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), Louisiana courts continued to permit the use of the motion for new trial as a procedural device to question legal sufficiency of evidence. However, in Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), the United States Supreme Court made it very clear that a finding of legal insufficiency precluded a new trial on double jeopardy grounds. See State v. Shapiro, 431 So.2d 372 (La.1982).[2]
In 1982, on recommendation of the Louisiana State Law Institute, the Legislature added La.C.Cr.P. Art. 821, which provided for a postverdict judgment of acquittal to fill the procedural void created by the elimination of the directed verdict in jury cases. The article constitutes a legislative recognition that a motion for a new trial is not the appropriate procedural vehicle for questioning the sufficiency of the evidence, because the relief sought for the state's failure to produce sufficient evidence is a judgment of acquittal, not a new trial. See La.C. Cr.P. Art. 821, Reporter's Comments.
Adoption of Article 821 emphasizes the distinction between the trial court's granting of a new trial based on the "weight" of the evidence and the trial court's granting of a judgment of acquittal based on a finding that the evidence was legally insufficient.[3]
The United States Supreme Court clearly recognized the same distinction for double jeopardy purposes in Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), and Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). The distinction, therefore, is not merely one of form, but is of critical legal significance. In the first instance, the trial judge is serving as a "thirteenth juror", and the judge sets aside the verdict in the interest of justice, based solely on the "weight" of the evidence. La.C.Cr.P. Art. 851. Such ruling does not bar a retrial. Tibbs v. Florida, above. Compare Hudson v. Louisiana, above, note 5 at p. 44, note 5 at p. 973 of 101 S.Ct. See also the concurring opinion of Justice Tate in State v. Hudson, 373 So.2d 1294 (La.1979). By contrast, a trial *1336 judge's ruling that the evidence failed to meet the Jackson standard of legal sufficiency must result in a judgment of acquittal. Hudson v. Louisiana, above.
In State v. Korman, 439 So.2d 1099 (La. App. 1st Cir.1983), the court of appeal rendered a scholarly opinion on the issue. The trial judge, in granting a new trial, had merely stated that the evidence was "insufficient". The state appealed the granting of the new trial, and the court of appeal, unable to discern the basis for the trial court's order, remanded with explicit directions to clarify the basis for the ruling. The court of appeal stated:
"It is our view, and we so hold, that only the weight of the evidence can be reviewed by the trial judge in a motion for new trial under C.Cr.P. Art. 851. The trial judge can grant a new trial only if dissatisfied with the weight of the evidence, and in so determining the trial judge makes a factual review as a thirteenth juror rather than under the Jackson standard. If he grants a new trial because of the weight of the evidence, that new trial can proceed without being barred by double jeopardy. Tibbs v. Florida, supra. Such a determination by the trial judge is not subject to review by the appellate courts because of Louisiana Constitution Article 10, Sec. 10(B) and C.Cr.P. Art. 858.
"On the other hand, if the trial judge finds the evidence legally insufficient, he must do so under C.Cr.P. Art. 821 which decision is subject to appellate review on application of the state. The trial judge cannot act as a thirteenth juror in reviewing a jury verdict under C.Cr.P. Art. 821, but must review under the much more restrictive Jackson standard."
For a similar scholarly analysis and result, see State v. Chapman, 438 So.2d 1319 (La. App. 3rd Cir.1983).
In summary, I emphasize that the purpose of these concurring thoughts is not to quibble over the "title" of the motion by which the issue of legal insufficiency under Jackson is raised. Certainly, the trial court (or the appellate court) may treat the issue as properly presented despite the failure of counsel to denominate the motion properly as one for judgment of acquittal.[4]
NOTES
[1] "Negligent homicide is the killing of a human being by criminal negligence.

The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
Whoever commits the crime of negligent homicide shall be imprisoned, with or without hard labor, for not more than five years." R.S. 14:32.
"Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." R.S. 14:12.
[1] For an understanding of the jurisprudential developments which preceded the 1975 amendment, see State v. Hudson, 253 La. 992, 221 So.2d 484 (1969); State v. Douglas, 278 So.2d 485 (La.1973); State v. Baskin, 301 So.2d 313 (La.1974).
[2] For a discussion of Louisiana law in this respect predating the present Code of Criminal Procedure, see State v. LaBorde, 234 La. 28, 99 So.2d 11 (1958); State v. Gatlin, 241 La. 321, 129 So.2d 4 (1961).
[3] This distinction was earlier recognized by this court in State v. Jones, 288 So.2d 48 (La.1973).
[4] In State v. Peoples, 383 So.2d 1006 (La.1980), this court recognized its authority to review the legal sufficiency of evidence based on an assignment of error filed with this court, even though the defendant failed to raise the issue in the trial court. Later, in State v. Raymo, 419 So.2d 858 (La.1982), we recognized our authority to review sufficiency, even though defendant did not raise this issue in this court by assignment of error.