493 So.2d 213 (1986)
STATE of Louisiana
v.
Steven SHARLOW.
No. 86-KA-123.
Court of Appeal of Louisiana, Fifth Circuit.
July 23, 1986.
Writ Denied October 31, 1986.
*215 Daniel E. Becnel, Jr., Reserve, for defendant-appellant.
Thomas Daley, G. Charles Lorio, Asst. Dist. Attys., Edgard, for plaintiff-appellee.
Before BOWES and WICKER, JJ., and NACCARI, J. Pro Tem.
WICKER, Judge.
This appeal arises from the conviction by a jury of defendant, Steve Sharlow, for manslaughter. Sharlow asserts that the trial court erred in denying his motion for a directed verdict at the close of the state's case because the state failed to prove his involvement in the death of the victim. Further, Sharlow urges that the presiding judge failed to instruct the jury that a presumption arises against the state when it does not call witnesses it subpoenaed and listed on the pre-trial witness list. We have also discovered patent errors involving the sequestration of the jury and the proceedings following a sanity hearing ordered by the trial judge. Since we find no sound basis for reversal, we affirm.
The facts reveal that in the early evening of December 21, 1983, the victim, Jap Willis, was shot, killed and robbed while playing dice outside Peg's Bar in LaPlace, Louisiana. Willis had been gambling all day, winning several hundred dollars. At some time in the afternoon, he entered Peg's Bar, flashed his winnings, and purchased drinks for everyone on the premises. Willis then left the bar to participate in another dice game behind the bar. During the game, the lights in Peg's Bar suddenly went out. While the lights were out, Sharlow grabbed Willis from behind in an attempt to rob him. Willis struggled with Sharlow, a gunshot went off, and Willis fell to the ground with a bullet injury to his head. The participants and observers of the dice game fled the scene, but several of the witnesses returned shortly thereafter and called the police. Willis died on the way to the hospital. After speaking to several witnesses to the shooting, Sharlow was arrested, and he was subsequently indicted for the first degree murder and armed robbery of Jap Willis.[1]
Following Sharlow's indictment he was arraigned and pleaded not guilty to the charges. The trial court subsequently appointed a sanity commission to determine Sharlow's capacity to proceed to trial. On March 20, 1985, the trial judge ruled the defendant mentally competent to proceed and to assist at his trial on the basis of the testimony of the sanity commission members. He was not rearraigned prior to the trial, and Sharlow was thereafter convicted by a twelve member jury of the lesser included offense of manslaughter. (L.S. A.-R.S. 14:31). He subsequently received a sentence of 21 years at hard labor.
In his first assignment of error, Sharlow alleges that he was entitled to a directed verdict of acquittal at the close of the state's case-in-chief on the basis that no reasonable jury could have found that the state presented sufficient evidence to prove Sharlow's involvement with the death of Jap Willis, or upon which to convict Sharlow of manslaughter. Defendant made an oral motion for a directed verdict at the close of the state's case based on an alleged insufficiency of evidence. The motion for a directed verdict is properly made only when the case is tried before a judge alone. La.C.Cr.P. art. 778; State v. Allen, 440 So.2d 1330 (La.1983); State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Brown, 395 So.2d 1301 (La.1981). However, the established jurisprudence treats such a motion on appeal as one for a new trial alleging insufficiency of evidence, and employs the Jackson[2] standard of review, which is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. State v. Allen, supra; State v. Smith, 430 So.2d 31 (La.1983). Where the evidence against a *216 defendant is circumstantial in nature, the evidence, assuming every fact proven which it tends to prove, must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. However, the state still has the burden of proving every element of the crime beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984).
The standard for appellate review for claims of evidentiary insufficiency involving both circumstantial and direct evidence was recently set forth in State v. Captville, supra at 678-679 as follows:
... an appellate court reviewing the sufficiency of evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. [footnote omitted] As stated by this court in State v. Chism, 436 So.2d 464, 470 (La.1983), La.R.S. 15:438 `may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, [but] it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence.'
See also, State v. Langford, 483 So.2d 979 (La.1986).
La.R.S. 14:31 provides in full:
Section 31. Manslaughter
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.
According to the state's witnesses, Woodrick Sanders, Ricky Patterson and Herbert Johnson, the victim, Jap Willis won a "bunch of money" playing dice in the back of Peg's Bar the day of the shooting. During the late afternoon, the witnesses stated he entered the bar, "flashed" the money and purchased drinks for everyone in Peg's Bar. While in the bar, Woodrick Sanders was approached by Sharlow who asked him to "help him rob ... Willis". Sanders claimed that he refused to assist Sharlow.
Sometime later, Sanders, Patterson, Johnson and others were outside the bar watching Willis shoot dice again, when the lights inside the bar were turned off. Although the testimony of these witnesses varied to some degree, the evidence indicates that Sharlow approached Willis, who was stooped over and engaged in the dice game, and attacked Willis from behind, demanding that Willis hand over his money. Willis reached down to gather up his money, but when he stood up, he seized Sharlow and a struggle ensued at which time a "shot went off". At this point, Johnson stooped down to search Willis, but Sharlow pointed a gun at him, warning him not to touch the victim and then he (Sharlow) reached down and robbed Willis. At this point the witnesses and Sharlow fled the *217 scene. Sanders stated that he followed Sharlow, and on the way retrieved Willis' paycheck which Sharlow dropped in his hasty retreat. Sanders caught up with Sharlow and brought him to the house of his brother, Kevin Sanders. There, Sharlow attempted to telephone Peg's Bar in an unsuccessful effort to determine whether Willis was dead or alive. Because they were unable to obtain the information, Sanders and Sharlow returned to the area of Peg's Bar. Before leaving Kevin Sanders' house, however, Sharlow placed a gun he was carrying in Kevin Sanders' custody with instructions that he would return for the weapon. Woodrick Sanders admitted that he was arrested a few days later for accessory to murder and armed robbery, as well as for forgery and theft of the check belonging to Willis.[3] However, Kevin Sanders corroborated Woodrick Sanders' testimony and identified the gun introduced at trial as the one he received from Sharlow the night of the shooting.
Identification of the victim and evidence of the cause of death from a gunshot wound to the head was introduced at trial through the defendant's death certificate, the testimony of the parish coroner, the pathologist who performed the autopsy, and the emergency room doctor who cared for the victim just before he died. The state rested its case at that juncture and Sharlow moved for a directed verdict which was denied.
Sharlow asserts that the testimony of the state's witnesses is unreliable. He argues that Patterson's testimony that he saw Sharlow shoot Willis was contradicted by his earlier statement to the police that he did not see the shooting since he immediately fled from the scene after the lights were turned off. Defendant further argues that the testimony of state witnesses, Johnson and Sanders, was not credible because each is a former felon and a suspect in the crimes against the victim; and that Johnson's testimony that there were two shots fired at the crime scene was inconsistent with the testimony of the other witnesses who stated one shot was fired. The state argues correctly, however, that the discrepancies in the testimony of the witnesses and their criminal history of arrests and/or convictions are credibility issues, and that the fact finder in a criminal case is entrusted with the duty of weighing the respective credibility of witnesses. Furthermore, the appellate court will not disturb credibility determinations beyond the appeal court's evaluation of sufficiency under the Jackson standard of review. State v. Richardson, 425 So.2d 1228 (La. 1983); State v. Butler, 450 So.2d 764 (La. App. 5th Cir.1984).
A careful reading of the trial testimony appears to support Sharlow's conclusion that Patterson's testimony was contradictory to his prior statement given to police shortly after the shooting. However, while the statement does show that he responded "No" to the officer's question "Did you see Steve shoot the guy?", Patterson explained in his trial testimony "that's the question but that ain't the answer." Other comparisons of the witness's prior statements to police are consistent with his trial testimony that he saw the defendant shoot Jap Willis. Furthermore, Patterson explained that after the lights were turned off inside Peg's Bar, the outside area where the dice game was being played was illuminated by the lights from the neighboring bar and a trailer park.
The defense attorney was allowed to read from Patterson's prior statement to police in an attempt to impeach his trial testimony. Counsel cross-examined him in detail about these statements, including alleged discrepancies in his trial testimony, and the jury, therefore, had full disclosure of those inconsistencies that Sharlow argues show Patterson's testimony to be unbelievable. The jury apparently decided to believe the prosecution witness, as it was entitled to do. State v. Captville, supra.
*218 With regard to Johnson's testimony, the fact that Johnson had a prior felony conviction was admitted to by the witness. Johnson also admitted that he would have robbed Jap Willis, but was prevented from doing so by Sharlow. However, Johnson testified that he told the truth regarding the shooting of Jap Willis, and the jury apparently believed him.
Woodrick Sanders admitted that he had a prior conviction, and that he had cashed the victim's paycheck stolen during the commission of the instant crime. Although he was the only witness to testify that a second shot was fired, a close reading of the record reveals this testimony was not, as defense counsel argues, so inconsistent with any other witness's testimony such as to discredit his entire testimony.
Finally, Sharlow argues that the gun introduced at trial and identified by state witnesses as the one Sharlow used to shoot the victim is of questionable value because there was an incomplete chain of evidence to connect the fatal bullet with this gun or the gun with the defendant. Sharlow concludes that because those witnesses who were needed to complete the chain of custody were subpoenaed by the state, but not called, defendant was entitled to the presumption that these witnesses would testify "adverse" to the state, and would further discredit the state's evidence.
With regard to the break in the chain of custody to link the gun introduced at trial to the defendant and the instant crime, it is only required that the evidence as a whole establish more probably than not that the object introduced was the same as the object originally seized. State v. Vaughn, 431 So.2d 763 (La.1983); State v. Davis, 411 So.2d 434 (La.1982); State v. Landry, 388 So.2d 699 (La.1980); State v. Gultry, 471 So.2d 804 (La.App. 5th Cir. 1985). Proof that the evidence is connected to the case may be made by visual identification or by chain of custody; thereafter, the weight of such evidence is a question for the jury. State v. Landry, supra. Lack of positive identification or a defect in the chain of custody also goes to the weight of the evidence. State v. Gultry, supra; State v. Sam, 412 So.2d 1082 (La. 1982). Thus, the absence of the testimony of a person in a chain of custody where it has been otherwise demonstrated that the evidence is more probably than not connected to the case does not diminish the evidentiary value, rather it goes to the weight to be given the evidence by the jury in its determination of guilt or innocence. State v. Barrett, 350 So.2d 664 (La.1977).
In the instant case, Officer Joseph Oubre testified at trial for the purpose of establishing the chain of custody linking the murder weapon to the gun introduced at trial. He stated that Alger Sanders turned the weapon over to Officer Sherman Walker, who, in turn, signed the weapon over to Captain Gene Fuselier, who was in charge of the evidence locker. The Captain then relinquished it to Officer Oubre who brought it to defendant's trial. Officer Oubre explained that the chain of custody was broken by the death of Officer Sherman Walker. However, he identified Officer Walker's signature placed on the evidence prior to his turning it over to Captain Fuselier. Officer Oubre, additionally, testified that a ballistic report was not done to link the fatal bullet with the gun because the bullet had been so badly damaged. However, as stated previously, Kevin Sanders identified the gun as the one which was given to him by Sharlow on the night of the crime, and Woodrick Sanders identified the gun as the one used in the shooting.
Sharlow asserts that the evidentiary value of the weapon was diminished because the state subpoenaed, but failed to call a key witness in the chain of evidence who could connect the gun to the shooting and to Sharlow. Officer Walker received the gun from Alger Sanders, but Walker was deceased at the time of trial. Thus, the key witness referred to, although not named by Sharlow, is apparently Alger Sanders. The absence of Alger Sanders and the deceased officer, however, goes to the weight of the evidence to convict, which was a question for the trier of fact. State v. Barrett, supra. The absence of these *219 witnesses, and their importance to the state's case was brought to the jury's attention by defense counsel and, therefore, the jury had these factors before it in determining of the weight to give the evidence. State v. Joseph, 454 So.2d 237 (La. App. 5th Cir.1984); State v. Barrett, supra. Furthermore, we find that the testimony from Officer Oubre identifying the deceased officer's signature on the evidence, coupled with the identification of the gun by Woodrick Sanders as the one used by Sharlow in the shooting death of Willis, together with the testimony of Kevin Sanders that the gun was the one left with him by Sharlow on the night of the shooting, is sufficient to demonstrate the probable connection of this evidence to the case. State v. Vaughn, supra; State v. Barrett, supra.
After reviewing the testimony of the witnesses and the chain of evidence, we find the jury acted reasonably in rejecting the defendant's hypothesis of innocence on the basis that the state's evidence was unreliable and not worthy of belief. Viewing the evidence in the light most favorable to the prosecution, all the facts established by the direct evidence and inferred from the circumstantial evidence are sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of the essential elements of the crime of manslaughter. State v. Captville, supra.
The second error presented by Sharlow alleges that the trial court erred in not instructing the jury as to the adverse presumption which arises upon a party's failure to call witnesses within his control. In this regard, Sharlow asserts that the state rested its case without calling several witnesses who had been subpoenaed for appearance at trial. The defense contends that the failure to call these witnesses to testify entitled defendant to the presumption that their testimony would be "adverse" to the prosecution's interest, citing La.R.S. 15:432.
La.R.S. 15:432 reads in pertinent part:
A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption ... that evidence under the control of a party and not produced by him was not produced because it would not have aided him ...
The failure of the trial judge to give the jury the instruction was objected to by defense counsel. The court denied the request pointing out that the witness list was available to the defense and that the defense could have subpoenaed the witnesses.
A special charge to the jury must be given by the judge if it is "wholly correct and pertinent". State v. Arnaud, 412 So.2d 1013, 1020 (La.1982). In State v. Harrison, 471 So.2d 1088 (La.App. 3rd Cir. 1985), the court stated that the presumption does not apply to a subpoenaed witness since "control" of a witness refers to the unavailability of the witness to the other party. Where the witness is equally available to the state and the defense, the evidence is not considered to be under the control of either party. State v. Simms, 381 So.2d 472 (La.1980).
In the instant case, the state filed its witness list into the record several months prior to trial, thus making it available to Sharlow. Further, the defendant could have requested the trial court to issue an instanter subpoena for the witnesses. Since the witnesses were equally available to the defense, the presumption does not apply. Consequently, the trial court did not err in refusing to charge the jury as requested by Sharlow since the charge would have been incorrect.
Finally, we have reviewed the record for errors patent. In an error patent review La.C.Cr.P. art. 920 provides "[t]he following matters and no others shall be considered on appeal: (1) An error designated in the assignment of errors; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
*220 The record in a criminal case which may be examined for discoverable error even in the absence of court exceptions and duly assigned errors, includes the caption, the time and place of holding court, the indictment or information and its endorsement, the arraignment, the plea of the accused, the mentioning of the impaneling of the jury, the verdict and the judgment, the bill of particulars filed in connection with a short form indictment or information, and, in capital cases the minute entry indicating that the jury had been sequestered. State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Lewis, 473 So.2d 357 (La.App. 5th Cir. 1985).
Our review of the record for errors patent discloses that the minute entry in the record fails to indicate whether the jury was properly sequestered. Since this case was tried as a capital murder case, this is error patent.
Code of Criminal Procedure Article 791 provides:
A. A jury is sequestered by being kept together in the charge of an officer of the court so as to be secluded from outside communication, except as permitted by R.S. 18:1307.2.
B. In capital cases, after each juror is sworn he shall be sequestered.
C. In noncapital cases, the jury shall be sequestered after the court's charge and may be sequestered at any time upon order of the court.
Noncompliance with provisions of this article is error patent on the face of the record reviewable even without formal objection or motion. State v. Willis, 371 So.2d 1327 (La.1979); State v. Martin, 329 So.2d 688 (La.1976). In capital cases, sequestration is strictly enforced to the extent that, upon a separation of a juror after he is sworn, a rebuttable presumption of misconduct and reversible error arises. State v. Spencer, 446 So.2d 1197 (La.1984). The presumption is rebutted only if it affirmatively appears that no prejudice to the accused could have resulted.
Although the minutes indicate that the trial judge here failed to give a sequestration charge to the jury, the record shows the jury had been placed under sequestration.[4] At the commencement of the jury selection, the trial judge advised the members of the prospective jury that the case to be tried was for a capital offense and that selected jurors would be sequestered. Those jurors selected from each panel were then immediately sworn after acceptance and sequestered. Thereafter, during the rest of the three day trial, and at each point when the jury was removed from the jury box, the record shows they did so accompanied by the bailiff. Since no prejudice to the accused resulted from the omission in the minute entry, we find that this error is harmless.
Finally, our review of the record reveals a second error patent in that the minutes of the record show that defendant was arraigned on February 13, 1984 prior to his sanity hearing held on March 20, 1985, and he was not thereafter rearraigned. It was error patent on the face of the record for the trial court to have arraigned the defendant and accepted his plea of not guilty prior to the conclusion of his sanity hearing.[5] La.C.Cr.P. art. 642 However, as stated in State v. Charles, 450 So.2d 1287, 1291 (La.1984).

*221 Not all errors discoverable on the face of the proceedings are reversible errors... "Whether a patent error, like other statutory error, requires reversal must be evaluated in light of the potential impact on the fairness of the proceedings." State v. White, 404 So.2d 1202, 1205 (La.1981).
The defendant was arraigned on June 19, 1980 and pleaded not guilty. There is no prejudice in such a plea. See State v. Watson, 423 So.2d 1130, 1134 (La.1982). The law supplies "not guilty" as the default plea should the defendant refuse to plea [footnote omitted] or otherwise fail to plea. [footnote omitted] The "not guilty" plea may be subsequently changed to a plea of "guilty", [footnote omitted] or a plea of "not guilty" and "not guilty by reason of insanity." [footnote omitted]
The defendant did not contemporaneously object to the arraignment occurring before the sanity hearing, and could be said to have waived the objection. [footnote omitted] The trial judge was not made aware of the outstanding order appointing the sanity commission, and was not given an opportunity to prevent or cure any error. State v. Herrod, 412 So.2d 564, 566 (La.1982). The arraignment did not prejudice the defendant.
In the instant case, defendant did not contemporaneously object to the arraignment occurring before the sanity hearing. Nor does he urge this error on appeal. Accordingly, he has waived the objection. La.C.Cr.P. art. 555; State v. Charles, supra.
Additionally, no prejudice occurred from defendant's pleading not guilty prior to his being adjudicated competent to stand trial. La.C.Cr.P. art. 921; State v. Charles, supra; State v. Nicholas, 462 So.2d 1295 (La.App. 5th Cir.1985). Therefore, we find that the trial judge's failure to rearraign Sharlow after the sanity hearing constitutes harmless error.
Accordingly, the defendant's conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] Only the first degree murder prosecution is before the court on appeal.
[2] Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
[3] Sanders had not gone to trial on the forgery and theft charges at the time of his testimony. It is unknown whether the other charges were dropped.
[4] As a general rule when there is a conflict in the record, the minutes of the court prevail. See, State v. Pepper, 189 La. 795, 180 So. 640 (1938); State v. Elfert, 247 La. 1047, 175 So.2d 826 (1965). However, an exception seems to be recognized where from a reading of the transcript it is clear the facts have been incorrectly stated in the minutes. State v. Lynch, 441 So.2d 732 (La.1983); State v. Godejohn, 425 So.2d 750 (La.1983); City of Monroe v. Sharpe, 235 La. 1005, 106 So.2d 450 (1958); State v. Hoover, 203 La. 181, 13 So.2d 784 (1943).
[5] L.S.A.-C.Cr.P. art. 642 states: "The defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed."