401 So.2d 1178 (1981)
STATE of Louisiana
v.
Betty M. BADON.
No. 81-K-1341.
Supreme Court of Louisiana.
June 5, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard K. Knapp, Dist. Atty., George Perez, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-relator.
Kenneth E. Badon, Lake Charles, for defendant-respondent.
PER CURIAM.
We granted the state's mid-trial application for supervisory writs to review a single question raised below: whether a police officer may testify with regard to the results of a field sobriety test in the absence of proof that he first advised the defendant of his Miranda rights. Defendant was charged by separate bill of information with driving while intoxicated, La. R.S. 14:98, resisting an officer, La. R.S. 14:108, and improper lane usage, in violation of La. R.S. 32:78(B). The state consolidated the prosecutions and brought defendant to trial on May 21, 1981 before the court alone. Evidence at trial indicated that on November 10, 1980, Trooper Russell Haman with the state police spotted defendant driving the wrong way down the I-10 bridge in Calcasieu Parish and pulled her over. According to the officer, defendant smelled strongly of alcohol, and staggered on her feet, when she stepped from her car. At this point, Trooper Haman administered a field sobriety test. The test gauges a suspect's responses according to the performance of certain physical tasks: walking in a straight line; standing on one foot; touching a finger to the point of the nose; speaking distinctly in a coherent manner, etc.[*]
With one Officer's first mention of the field sobriety test, defense counsel objected that the state had not provided him with timely notice under La. C.Cr.P. Art. 768. The trial court ultimately ruled that Art. 768 notice was not required. Cf., State v. Himel, 260 La. 949, 257 So.2d 670 (1972). Nevertheless, the court maintained the objection on grounds that the officer had not advised defendant of her Miranda warnings before administering the test. It then recessed trial to give the state an opportunity to challenge that ruling in this Court. We now reverse.
In Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), *1179 the Supreme Court held that "... the prosecution may not use statements, whether exculpatory and inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." In Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966), decided the same term, the court then emphasized that the Fifth Amendment privilege, and the coextensive Miranda safeguards "protect[ ] an accused only from being compelled to testify against himself, or otherwise provide the state with evidence of a testimonial or communicative nature..." "The distinction which has emerged..." the court noted, "is that the privilege is a bar against compelling `communication's' or `testimony,' but that compulsion which makes a suspect or accused the source of `real or physical evidence' does not violate it." Id., 384 U.S. at 764, 86 S.Ct. at 1832.
Courts that have considered the present question have held uniformly that a field sobriety test does not touch upon an individual's Fifth Amendment privilege and that no Miranda warnings are therefore required. City of Wahpeton v. Skoog, 300 N.W.2d 243 (N.D.1980); People v. Ramirez, 609 P.2d 616 (Colo.1980); Palmer v. State, 604 P.2d 1106 (Alaska 1979); Commonwealth v. Benson, 280 Pa.Super. 20, 421 A.2d 383 (1979); Trail v. State, 526 S.W.2d 127 (Tenn.Cr.App.1975). In City of Wahpeton v. Skoog, supra, 300 N.W.2d at 245, the Supreme Court of North Dakota set forth the appropriate Fifth Amendment analysis under Schmerber and we now adopt its reasons as our own:
Field sobriety tests are based on the relationship between intoxication and the loss of coordination which intoxication causes. These tests do not force the subject to betray his subjective knowledge through his communicative facilities. They only compel the suspect to exhibit his physical characteristics of coordination as a source of real or physical evidence which may be testified to by the officer observing the tests. They require the suspect "to stand, to assume a stance, to walk, or to make a gesture" within the purview of Schmerber. We note, as the Schmerber court did, that "[s]ome tests seemingly directed to obtain `physical evidence,' for example, lie detector tests measuring changes in body function during interrogation, may actually be directed to eliciting responses which are essentially testimonial." In this instance, however, no such problem exists. Thus, we believe that field sobriety tests are physical and real evidence and do not activate the protections afforded by the Fifth Amendment.
Accordingly, when trial of the present case resumes, the state trooper may testify with regard to the physical tasks he asked the defendant to perform. The ruling of the trial court is therefore set aside and this case is remanded for all proceedings not inconsistent with the views expressed herein.
RULING VACATED AND SET ASIDE; CASE REMANDED.
MARCUS, J., concurs.
NOTES
[*] This description of the field sobriety is the state's in its writ application, and our opinion is accordingly limited to the kinds of physical tasks described. We expressly do not consider here the more conventional questioning of a defendant by a police officer which may, depending on the circumstances, amount to a custodial interrogation likely to elicit an inculpatory response: e.g., whether defendant had been drinking, how much, etc. See, Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).