NORRIS, Judge.
Crawford A. Rose Jr. was charged by bill of information with driving while intoxicated, third offense. La.R.S. 14:98 D. He *1115 proceeded to a jury trial and was found guilty as charged. The district court sentenced him to five years at hard labor, six months to be without benefit of probation, parole or suspension of sentence; the remainder was suspended and Rose was placed on active supervised probation for five years subject to special conditions. Rose now appeals, advancing four assignments of error. For the reasons expressed, we affirm.

Factual background

Late in the afternoon of January 7, 1991 State Trooper Kenneth Baker was driving from Troop F in Monroe to his home in Lake Providence. He was not on duty at the time, but was in a marked State Police car. As he rode north on La. 183 he saw an oncoming car lose control some distance away. The oncoming car, a 1972 Lincoln Mark IV, ran off the west side of the highway, then veered across to the east side, nearly running into a shallow ditch, and then crossed back to the west side, sliding into a rather deep, muddy ditch. Trooper Baker, who had stopped his car, pulled over to the Mark IV and found its occupant gunning the engine as if trying to get out of the ditch. The occupant was Crawford Rose Jr. Trooper Baker helped him out of the car and noticed that his eye^ were bloodshot, his face red, and he had a strong scent of alcohol about him. Suspecting that Rose was intoxicated, the trooper asked for Rose’s driver’s license; Rose produced an expired 1981 license. Rose first told him he had not been drinking, and the car simply lost control; then he said he had had a couple of beers. Trooper Baker radioed for an on-duty officer.
Trooper Jeff Lewis arrived at 5:50 p.m. and observed Rose’s condition. He conducted a field sobriety test, which Rose failed. He placed Rose under arrest for DWI-2d offense (his radio request for a computer check of Rose’s license showed one prior DWI), expired inspection sticker and failure to maintain control; he advised Rose of his Miranda rights. After the wrecker arrived, Trooper Lewis drove Rose to the Richland Parish sheriff’s office and gave him an Intoxilyzer test at 6:40 p.m. It produced a reading of .200%. Rose could not believe he was so drunk; he asked for a second test, and at 6:52 Trooper Lewis agreed. This time the reading was .183%.
Rose admitted at trial that he had drunk five or six beers on the day of his arrest at Brother-in-Law’s Lounge in Rayville, but he thought he was in good shape when he left for home that afternoon. Clara Jackson, who owned Brother-in-Law’s at the time, testified that she can “pretty well” tell when a person is drunk, and Rose was “fine” when she last saw him sometime before he left that day. Rose added, and Ms. Jackson corroborated, that he has not had a drink since this incident occurred.
The state also introduced the testimony of two police officers, Thomason and Brit-ton, who had arrested Rose for DWI in 1986 and 1989, respectively. Certified copies of the tickets, bills of information, Boykin transcripts and court minutes from those cases showed that Rose had pleaded guilty to DWI on September 10, 1986 (case no. 45,793) and May 22, 1989 (case no. 51,120).
As noted, the jury found Rose guilty as charged.

Discussion: Motion in limine

By his first assignment Rose urges the trial court erred in granting the state’s motion in limine to exclude a court order from evidence. He argues that this action denied him the right to present exculpatory evidence under the guise that it was “confusing.”
The motion, filed several days before trial was to start, alleged that on January 22, 1988 a judge of the fifth judicial district had issued an "order” in ease no. 45,793 purporting to set aside that conviction:
IT IS ORDERED that the sentence under which Movant, CRAWFORD ROSE, JR., presently suffers, * * * be and hereby is suspended, and further that the conviction resulting therein be, and hereby is, set aside and the prosecution thereof be, and hereby is, dismissed *1116 and that Movant’s full driving privileges be and hereby are reinstated * * *.
The motion claims that this “order” was apparently an attempt to give Rose the benefit of La.C.Cr.P. art. 894 B, which provides that a misdemeanor conviction may be set aside and the prosecution dismissed under certain circumstances; but even in those circumstances, “the conviction may be considered as a first offense and provide the basis for subsequent prosecution as a multiple offender.” The motion also claimed that the order lacked an accompanying motion and would confuse the jury; it prayed that the order be excluded from evidence.
The trial court granted the motion, citing C.Cr.P. art. 894 B and ruling that the prior conviction “still can be used to bill as a multiple offender, as a second or third or fourth offense.” R.p. 148. The court also commented that the exact purpose of the order is unclear, as the conditions for setting aside the conviction (mainly that the imposition of sentence must be suspended) had not been met and there was no evidence of a contradictory hearing with the Department of Public Safety.
Rose argues that the effect of the ruling, to exclude the order from evidence, denied him the right to present “any and all relevant evidence bearing on his innocence unless prohibited by our federal and state constitutions, by law, or by jurisprudence.” See State v. Harrison, 560 So.2d 450 (La.App. 2d Cir.), motion denied 565 So.2d 433 (1990). We disagree.
“Relevant evidence” is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La.C.Ev. art. 401. Evidence which is not relevant is not admissible. La.C.Ev. art. 402. A dismissal of prosecution under C.Cr.P. art. 894 B, by definition, does not exclude the consideration of that conviction as the basis for later charging the defendant as a multiple offender. Thus a judgment dismissing a DWI conviction under art. 894 B is not relevant in a later case in which the defendant is being charged with multiple offender DWI. The trial court was not wrong to grant the motion and exclude the irrelevant evidence.
This assignment lacks merit.

Motion to recuse

By his second assignment Rose urges the trial court erred in denying his motion to recuse the district attorney from the prosecution. The motion alleges that Rose and the D.A., Mr. Coenen, are both attorneys who have practiced in Richland Parish for many years, mentions an incident between Rose and the current D.A.’s predecessor, Mr. Lofton, and concludes that “some animosity has existed between the District Attorney and the defendant due to allegations surrounding the circumstances under which the District Attorney acquired his office.” The trial court denied the motion as untimely.
Rose was arrested on January 7, 1991, and arraigned on April 17, 1991. He filed his motion to recuse on October 2, 1991, the first day of trial.
The motion to recuse is regulated by La.C.Cr.P. arts. 680 and 681; art. 681 states that the “motion shall be filed in accordance with Article 521.” Article 521 provides:
Art. 521. Time for filing of pretrial motions
Pretrial motions shall be made or filed within fifteen days after arraignment, unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate.
Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions.
Rose’s motion to recuse obviously came more than 15 days after arraignment and did not allege good cause to allow additional time to file. His attempted showing of good cause at the hearing was weak. Thus the trial court did not err in denying the motion as untimely.
Rose further argues, as he did at trial, that “it has long been the policy and cus *1117 tom of the Fifth Judicial District Court to not enforce arbitrary time limits set forth in the Code of Criminal Procedure,” as illustrated by the trial court’s willingness to act on the state’s motion in limine. The state in brief vigorously denies that such a policy or custom exists, and we find nothing to support it in the local rules of court. Moreover, we absolutely agree that procedural rules must be applied equally to defendant and state, La.C.Ev. art. 102; however, it was proper for the trial court to rule on a preliminary question of admissibility in limine (at the threshold of the trial). La.C.Ev. art. 104 A.
This assignment lacks merit.

Sufficiency of evidence

By his third assignment Rose urges the evidence was insufficient to sustain his conviction for DWI-3d offense. He first argues that if the jury had been allowed to see the January 1988 order dismissing one of his prior DWI convictions, he would have been found guilty only as a first offender. Next he argues that Trooper Lewis ticketed him for only DWI-2d offense. Finally he contends that the breath test readings fluctuated “dramatically” from .200% to .183% in only 12 minutes, thus casting great doubt on the accuracy of the machine.
In reviewing a case for sufficiency of the evidence, the relevant question is whether, after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Rose’s first claim fails for the reasons already discussed; even if the excluded order did indeed dismiss a prior DWI conviction under C.Cr.P. art. 894 B, that conviction is still available to enhance a later charge. The state offered competent proof of two prior convictions and Rose did not dispute them. R.p. 252. Rose’s second claim is not persuasive because the district attorney, and not the arresting officer, has charge of criminal prosecutions. La.Const. art. 5 § 26(B); La.C.Cr.P. art. 61. The officer who makes the arrest is bound only to inform the arrested person of the cause of the arrest, La.C.Cr.P. art. 218, but this does not start the criminal prosecution. La.C.Cr.P. art. 382. Trooper Lewis’s initial report reflects the best data he could obtain at the time, and the subsequent bill of information for DWI-3d is not an abuse of discretion.
Finally Rose urges that the Intoxi-lyzer test results were unreliable. Evidence of the machine’s certification and inspection, as well as Trooper Lewis’s certification, were properly admitted at trial. R.pp. 203-205. This laid an adequate foundation for receiving the test results in evidence. La.R.S. 32:663; State v. Wells, 559 So.2d 531 (La.App. 2d Cir.1990). Trooper Lewis also testified that the second reading might have been lower because Rose blew more gently the second time; however, a suspect cannot foil the apparatus by blowing too gently, as the machine will report if the sample is insufficient to produce a reading. R.pp. 204-205. There was also the lapse of time before the second test. Both readings were considerably above the legal limit of .10%.
Viewing this evidence in light most favorable to the prosecution, the jury was entitled to find beyond a reasonable doubt that Rose was operating a motor vehicle while under the influence of alcohol, and that this was his third DWI offense. The assignment lacks merit.

Excessive sentence

By his fourth assignment Rose urges the sentence is excessive. Rose was given five years at hard labor, with six months without benefit of parole, probation or suspension of sentence. La.R.S. 14:98 D. Execution of the remaining time was suspended and Rose was placed on active supervised probation, with the conditions that he submit to LSBA treatment for alcoholics, that he abstain from alcohol and drugs (except those prescribed by a physician) during probation, and that he perform 500 hours of community service by doing pro bono legal services, civil only, which he *1118 could begin while in jail. Rose cites the fact that the jury foreman requested leniency shortly after trial. Rose specifically complains about the community service hours. Citing the new Sentencing Guidelines (“La.S.G.”), he urges he belongs in Grid Cell 7-G, which recommends from 36 to 72 sanction units, but the six months in jail (96 sanction units) plus 500 hours of community service (25 sanction units) yields a total of 121, far beyond the recommended amount. Rose requests that the community service be deleted from the sentence.
Code of Criminal Procedure art. 894.1, which mandates that sentencing courts consider the new Sentencing Guidelines, did not become effective until 30 days after the January 1, 1992 promulgation date of the La.S.G. La. Acts 1991, No. 22; State v. Barnes, 607 So.2d 872 (La.App. 2d Cir.1992). Rose was sentenced on January 8, 1992. Thus the trial court was not yet required to consider the La.S.G.
Even as amended, art. 894.1 states that no sentence shall be declared unlawful, inadequate, or excessive solely due to the failure of the court to impose a sentence in conformity with the sentencing guidelines of the commission. The guidelines are advisory only. La.S.G. § 103 J. This is not to say, however, as the Assistant D.A. suggested at trial, that a particular jurisdiction might elect not to follow the guidelines. R.p. 299. Starting on January 31,1992, the district courts are obligated to consider (if not apply) the guidelines. La.C.Cr.P. art. 894.1 A, as amended.[1]
Since the trial court did not follow the La.S.G.- at all, we have reviewed the sentence under the traditional two-part test. The first part is a review for the trial court’s consideration of the aggravating and mitigating circumstances listed in La. C.Cr.P. art. 894.1 C prior to amendment. The district court is not required to list every factor as long as the record shows adequate consideration. State v. Smith, 433 So.2d 688 (La.1983). The objective of art. 894.1 is not a rote recitation of its provisions but the articulation of a factual basis for sentence. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even absent full compliance with the article. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements to be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981). Here the trial court reviewed every relevant factor carefully, making the favorable observation that Rose has not had a drink since this arrest. The court adequately followed the guidelines.
The second part is constitutional ex-cessiveness; a sentence violates La. Const, art. 1 § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). A trial court has wide discretion to sentence within the statutory limits and such a sentence will be set aside only on a showing of manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983).
The crime of DWI-3d offense carries a minimum of one year and a maximum of five years, with or without hard labor. Six months of the sentence must be without benefit of probation, parole or suspension of sentence. A fine of up to $2,000 is authorized. La.R.S. 14:98 D. Although Rose’s five-year sentence is the maximum allowed by the statute, his six months of actual jail time is the minimum and no fine *1119 was levied. This adequately answers the plea for leniency.
As for the community service, we recognize that 500 hours is a heavy condition of probation. However, it appears reasonably related to the goal of rehabilitation; two prior suspended sentences for DWI had not adequately impressed him to address his problem, but this sentence should. Besides, 500 hours does not strike us as an obvious abuse of discretion. Cf. State v. Byars, 565 So.2d 424 (La.1990), which set aside conditions of probation calling for 5,000 hours of community service.
This assignment lacks merit.

Conclusion

For the reasons expressed, the conviction and sentence are affirmed.
AFFIRMED.

. We observe parenthetically that Rose's two prior misdemeanor DWI convictions add one half of a point to his criminal history index, La.S.G. § 205 C(b)(3)(i), thus placing Rose in Grid Cell 7-F with recommended sanction units of 54 to 108. The units actually imposed, 121, are considerably closer to the correct range than Rose has argued.