733 So.2d 716 (1999)
STATE of Louisiana, Appellee,
v.
John David FINCH, Appellant.
No. 31,888-KA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
*719 Rellis P. Godfrey, Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Brian King, Tommy J. Johnson, Assistant District Attorneys, Counsel for Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
*720 STEWART, J.
The defendant, John David Finch, was found guilty as charged of driving while intoxicated-third offense ("DWI-3rd"), a violation of La. R.S. 14:98, and sentenced accordingly. The defendant now appeals his conviction and asserts eleven assignments of error. We affirm.

FACTS
While driving to work at approximately 5:30 to 5:45 a.m., on the morning of May 3, 1997, John McMellon, Jr. ("McMellon") saw a vehicle coming toward him. McMellon was traveling along Leonard Road, a two-lane roadway in Caddo Parish. The approaching vehicle was being driven by the defendant and was traveling in McMellon's lane of travel. McMellon pulled off of the road, came to a complete stop, and sounded his horn. A head-on collision ensued. Prior to the collision, McMellon noticed the defendant slumped over the steering wheel of the approaching vehicle.
McMellon and the defendant exited their respective vehicles after the collision. When McMellon inquired if the defendant was all right, the defendant responded that he was returning from the "boat" and that he should not have been drinking with the medication that he was taking. According to McMellon, the defendant stated "two or three times" that he should not have been drinking with his medication. McMellon later observed one of the deputies investigating the scene remove a beer can from the defendant's vehicle and pour out approximately half the contents.
Two deputies with the Caddo Parish Sheriff's Department arrived separately on the scene about fifteen to twenty minutes after the collision occurred. Deputy James W. McLamb testified that he noticed a strong odor of alcoholic beverage about the defendant. Deputy McLamb also noticed that the defendant appeared "unstable on his feet." According to Deputy McLamb, the defendant stated that he was coming from the "boats" and from Burton's Rock and Roll Café and further stated that he had consumed a couple of drinks.
Deputy Greg Ardoin ("Deputy Ardoin") observed that a head-on collision had occurred and began to investigate by questioning the defendant. The defendant informed Deputy Ardoin that he fell asleep while driving and was awakened by the collision. Deputy Ardoin detected "a strong odor of an alcohol beverage coming from Mr. Finch's person" and observed that the defendant's speech was slurred and that he appeared to need support while standing. Deputy Ardoin then asked the defendant to perform a horizontal gaze nystagmus ("HGN") test. The defendant consented to the test. Upon conducting the HGN test, Deputy Ardoin observed three clues in each eye, the maximum possible, indicating that the defendant was possibly under the influence of alcohol.
Deputy Ardoin also had the defendant perform additional field sobriety tests, including the "nine step walk and turn" and the "one legged stand." The "nine step walk and turn" test required the defendant to take nine steps, heel to toe, on an imaginary line with his arms at his side. Deputy Ardoin observed the defendant stop and steady himself a couple of times, step over the line several times, use his arms for balance, and fail to touch heel to toe several times. The "one legged stand" test required the defendant to stand straight up with one leg held in front of him and with his foot approximately six inches from the ground and to maintain this position while counting from one to thirty. Deputy Ardoin observed the defendant hop, lose his balance and, ultimately, give up at the count of eighteen.
After observing the defendant's performance on the three tests, Deputy Ardoin concluded that he had enough information to arrest the defendant for driving while intoxicated, at which time he read the defendant his Miranda rights and made the arrest. Later, the defendant refused to *721 take the Intoxilyzer test. According to Lieutenant John Fourcade, who attempted to administer the Intoxilyzer test, the defendant stated that his attorney advised him not to take the "breath test." While being questioned at the sheriff's substation by Deputy Ardoin, the defendant stated that he had been to the "boats" and to other drinking establishments and that he had consumed two or three drinks during the course of the evening prior to the collision. The defendant further stated that he had taken medication in the early evening of May 2, 1997.
A bill of information charging the defendant with DWI-3rd, a violation of La. R.S. 14:98, was filed August 15, 1997. The charge was predicated upon two prior DWI convictions on September 29, 1994 and December 15, 1989. The defendant filed a motion to quash the bill of information challenging the validity of the guilty pleas entered on the predicate offenses. The defendant also filed a motion to suppress any statements made by him, claiming that he was not advised of his constitutional rights. Both motions were denied. After a bench trial, the defendant was found guilty as charged and sentenced to four years at hard labor with all but fifteen months suspended and six months to be served without benefit of parole, probation, or suspension of sentence. Additionally, the defendant was placed on four years supervised probation, during which time he was ordered to attend Alcoholics Anonymous and complete both a substance abuse program and a driver's improvement program. The trial court also ordered the defendant to pay a fine of $1,000 and a monthly fee of $20 for costs of probation and parole. This timely appeal followed.

SUFFICIENCY OF THE EVIDENCE
In the first and tenth assignments of error, the defendant challenges the sufficiency of the evidence upon which his conviction was based. In his first assignment of error, the defendant argues that the trial court failed to consider that his driving impairment could have been caused by a prescribed non-controlled dangerous substance. In his tenth assignment of error, the defendant argues that the trial court failed to apply the presumption of sobriety and erred in equating the consumption of alcohol with intoxication.
Although the record does not reflect that the defendant filed a motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821, we will consider the defendant's sufficiency of the evidence arguments in the absence of such a motion. State v. Green, 28,994 (La.App. 2nd Cir. 2/26/97), 691 So.2d 1273.
Sufficiency of the evidence claims are reviewed pursuant to the standards set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under Jackson, supra, the proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2nd Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App. 2nd Cir. 9/25/98), 719 So.2d 610.
La. R.S. 14:98 provides in relevant part:

*722 A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator's blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or
(c) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964.
Thus, to convict an accused of driving while intoxicated, the prosecution need only prove that the defendant was operating a vehicle and that the defendant was under the influence of alcohol or drugs. State v. Courtney, 30,629 (La.App. 2nd Cir.5/13/98), 714 So.2d 176. Some behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. Id. It is not necessary that a conviction of DWI be based upon a blood or breath alcohol test, and the observations of an arresting officer may be sufficient to establish the defendant's guilt. Id. Intoxication is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330 (La.1983); State v. Courtney, supra.
In the present case, the defendant was charged with DWI-3rd for operating a motor vehicle while under the influence of alcoholic beverages. Because the defendant did not consent to take the Intoxilyzer test, the state relied upon subsection (a) of La. R.S. 14:98 in its charge against the defendant. The defendant did not dispute that he was involved in the collision with McMellon. According to McMellon, the defendant stated two or three times that he should not have been drinking alcohol while taking medication. Deputy Ardoin testified that he noticed a strong odor of alcoholic beverage on the defendant. Deputy Ardoin also noticed that the defendant's speech seemed slurred and he appeared unsteady on his feet. Additionally, Deputy Ardoin testified that the defendant failed the HGN test and failed to adequately perform both the "nine step walk and turn" test and the "one legged stand" test. Furthermore, Deputy Ardoin testified that after having been Mirandized and arrested, the defendant stated that he had been drinking alcoholic beverages that night prior to the collision.
Viewing the statements made by the defendant to McMellon, along with the observations of Deputy Ardoin and the defendant's admission after his arrest that he had consumed alcoholic beverages, in the light most favorable to the prosecution, a rational fact finder could have found the essential elements of the crime of DWI proven beyond a reasonable doubt. The evidence established that the defendant had consumed alcoholic beverages and then operated a motor vehicle. As addressed infra, the fact that the defendant claims to have taken medication in addition to the alcoholic beverages consumed does not give rise to a "reasonable hypothesis of innocence" that his driving impairment was as likely caused by the medication as by the alcoholic beverage. Rather, the taking of medication is of no consequence in light of the defendant's admission that he consumed alcoholic beverages.
Also, contrary to the defendant's assertion in his tenth assignment of error, the trial court did not err in failing to apply the presumption of sobriety as mandated by La. R.S. 32:662. The presumptions set forth in La. R.S. 32:662 apply when a chemical test has been administered. The defendant refused to take the Intoxilyzer test, thus the presumption of sobriety does not attach to him.
We find that the evidence was sufficient to find the defendant guilty beyond a reasonable doubt of the offense charged. Consequently, these assignments of error lack merit.

*723 ELEMENTS OF DWI AND

STATE V. NIX
In the second assignment of error, the defendant asserts that the trial court impermissibly expanded the definition of DWI as set forth in La. R.S. 14:98 by making a crime of driving while under the influence of a non-controlled dangerous substance. In the third assignment of error, the defendant, relying on State v. Nix, 535 So.2d 866 (La.App. 2nd Cir.1988), contends that the trial court failed to distinguish between a controlled dangerous substance and a non-controlled substance. The defendant's argument is that he was driving under the influence of a non-controlled prescriptive medication known as Cipro, that La. R.S. 14:98 does not sanction driving under the influence of non-controlled substances, and that because he was under the influence of a non-controlled substance, he cannot be found guilty of driving while under the influence of alcohol alone.
The defendant is in error in arguing that the trial court impermissibly expanded the definition of Louisiana's DWI law by finding him guilty of operating a vehicle while under the influence of a non-controlled substance. The defendant was charged with operating a vehicle under the influence of alcoholic beverages in violation of La. R.S. 14:98 and was found guilty of such by the trial court. The defendant raised the issue of driving under the influence of prescription medication, ostensibly as a defense to the charge of driving under the influence of alcohol. However, because the defendant did not testify, the trial court had no direct evidence that the defendant was even taking medication at the time of the accident.
Even if the defendant was, as he claims, under the influence of a prescriptive medication known as Cipro, this fact would not alter the conclusion that the defendant operated a vehicle while under the influence of alcohol. The defendant admitted that he consumed alcoholic beverages during the night prior to the collision. As discussed in State v. Nix, supra, where the defendant is under the influence of alcohol, the influence of drugs which may add to the intoxicating effect of the alcohol, does not negate the fact that the defendant is under the influence of alcohol. We did not distinguish between controlled dangerous substances and non-controlled substances in Nix, in which the defendant was found guilty of operating a vehicle under the influence of alcoholic beverages even though he was also under the influence of prescription medication. Similarly, no distinction is warranted in this instance. The defendant's use of medication is of no consequence in light of the fact that the evidence establishes that he was under the influence of alcohol.
We find no merit in these assignments of error.

BILL OF INFORMATION
In the fourth assignment of error, the defendant contends that the bill of information was patently defective in that it referred to a "Count No. I" where there was no count number one delineated in the information. We note that the bill of information charged the defendant with only one count of DWI-3rd. As such, a reference to "Count No. I" would logically refer to the one and only count on the bill of information.
La.C.Cr.P. art. 464 provides:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
The indictment must contain all the elements of the crime intended to be charged *724 in sufficient particularity to enable the defendant to prepare for trial, to allow the court to determine the propriety of the evidence which is submitted upon the trial, to impose the correct punishment on a guilty verdict, and to afford the defendant protection from double jeopardy. State v. Comeaux, 408 So.2d 1099 (La.1981). Where the wording of the bill of information is such that no prejudice or surprise was shown by the defendant, the information will be deemed sufficiently clear. State v. Sims, 426 So.2d 148 (La.1983).
Here, the bill of information informed the defendant that he was charged with DWI-3rd, a violation of La. R.S. 14:98, for unlawfully operating a motor vehicle while under the influence of alcoholic beverages. The bill of information also informed the defendant of the two predicate convictions, specifically stating the dates of the offenses and convictions and in which court those proceedings occurred, upon which the charge was based. There being no other counts against the defendant other than the one count of DWI-3rd, we do not perceive how reference to "Count No. I" could mislead the defendant to his prejudice. The defendant offers no argument on this point, and the record reflects that the defendant put forth a defense to the charge, thus demonstrating that he was not misled regarding the charge against him.
We find no error in the bill of information sufficient to warrant reversal of the defendant's conviction. This assignment lacks merit.

MOTION TO SUPPRESS AND THE MIRANDA WARNING
In the fifth and sixth assignments of error, the defendant asserts that the trial court erred in failing to exclude from evidence statements made by him and testimony regarding the field sobriety tests. The defendant contends that such statements and evidence were obtained without advisement of his rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Initially, we note that the defendant does not now and did not in his motion to suppress refer to any specific statement made by him prior to his arrest and the Miranda advisement.
Before a confession (or inculpatory statement) can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451; La.C.Cr.P. art. 703(D). The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Taylor, 30,310 (La. App. 2nd Cir. 2/25/98), 709 So.2d 883. Voluntary or spontaneous statements not given in response to custodial questioning or compelling influence are admissible into evidence despite any failure to comply with Miranda's prior warning requirements. Id. The trial court's determination regarding the admissibility of statements made by a defendant is to be given great weight upon appellate review. State v. Durr, 28,197 (La.App. 2nd Cir. 6/26/96), 677 So.2d 596.
At the hearing on the defendant's motion to suppress, Deputy Ardoin testified that the defendant did not make any statements to him until after being Mirandized. After his arrest and after being read the Miranda warning, the defendant admitted to Deputy Ardoin in response to a questionnaire that he had consumed two or three drinks and that he was coming from the "boats." This statement made after his arrest and the Miranda warning was properly admissible at trial.
Although not addressed at the hearing on the motion to suppress, rebuttal evidence was presented at trial regarding a similar statement made by the defendant to Deputy McLamb at the accident scene. Deputy McLamb testified that he noticed a strong odor of alcohol upon encountering the defendant at the accident *725 scene and that the defendant stated he had a couple of drinks and that he was coming from the "boats" and Burton's Rock and Roll Café. Deputy McLamb was not involved in conducting the field sobriety tests and was apparently not involved in the defendant's arrest. Nothing in the record suggests that the defendant's statement to Deputy McLamb was made during a custodial interrogation, and nothing suggests that the statement was anything other than a voluntary or spontaneous statement by the defendant.
However, even if it was error to admit the testimony of Deputy McLamb regarding statements made by the defendant, the error was harmless. In State v. Gibson, 391 So.2d 421 (La.1980), the Louisiana Supreme Court adopted the "harmless error" test set forth in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Chapman test asks whether there is a reasonable possibility that the erroneously admitted evidence might have contributed to the conviction and requires that the reviewing court be able to declare a belief that the error was harmless beyond a reasonable doubt. State v. Garris, 603 So.2d 277 (La. App. 2nd Cir.1992), writ denied, 607 So.2d 564 (La.1992).
Considering the other evidence before the trial court, specifically, the same statements made by the defendant to McMellon immediately after the accident and to Deputy Ardoin after the arrest and reading of Miranda, as well as the observations of Deputy Ardoin and the defendant's performance on the field sobriety tests, we find that the admission of Deputy McLamb's testimony regarding the defendant's statements was harmless error. Sufficient evidence existed to support the defendant's conviction in the absence of Deputy McLamb's testimony. We find no merit to the defendant's contention that the trial court erred in failing to suppress inculpatory statements.
Likewise, we find no merit in the defendant's contention that the trial court erred in admitting testimony regarding the field sobriety tests because he was not Mirandized prior to conducting the tests and because the testimony was in direct opposition to contemporaneous recordation of the same tests. This latter assertion more appropriately addresses the weight the trial court gave the results of the tests and the credibility of Deputy Ardoin, rather than the admissibility of the results.
Miranda warnings are not essential prerequisites to non-custodial, general, on-the-scene interrogation to determine facts relating to whether or not a crime has been committed, or by whom, at least absent a showing that the questioning is past such an investigatory state. State v. Brown, 340 So.2d 1306 (La.1976). Furthermore, police officers may testify with regard to the results of field sobriety tests in the absence of proof that the defendant was first advised of his Miranda rights. State v. Badon, 401 So.2d 1178 (La.1981). As discussed in State v. Badon, supra, field sobriety tests are physical evidence and do not activate the protections afforded by the Fifth Amendment. Such tests are based on the relationship between intoxication and the loss of coordination caused by intoxication and do not force test subjects to betray their subjective knowledge through communication. Id. Therefore, we find that the results of the field sobriety tests were properly admitted even though the defendant was not read the Miranda rights prior to the tests.
These assignments of error lack merit.

HORIZONTAL GAZE NYSTAGMUS TEST
In the seventh assignment of error, the defendant asserts that the trial court erred in admitting into evidence results of the horizontal gaze nystagmus ("HGN") test conducted by Deputy Ardoin. The defendant argues that the HGN test was not properly administered in accordance with the procedure discussed in *726 State v. Armstrong, 561 So.2d 883 (La. App. 2nd Cir.1990), writ denied, 568 So.2d 1077 (La.1990). The defendant also argues that the results of the HGN test were skewered because nystagmus is one of the known side effects of the medication that he was taking.
The defendant misreads our decision in State v. Armstrong, supra, as requiring a specific procedure for conducting the HGN test. In discussing the meaning of HGN and the manner in which HGN tests are conducted, we referred to a passage from State v. Clark, 234 Mont. 222, 762 P.2d 853 (1988), which explained in general terms how the HGN test is conducted and stated that "the driver is asked to cover one eye and focus the other on an object held by the officer at the driver's eye level." Relying on this passage, the defendant suggests that the HGN test was improperly conducted because Deputy Ardoin did not have the defendant cover one eye while conducting the test. Our discussion in Armstrong does not set forth a specific required procedure for conducting the HGN test, and nothing in the record indicates that Deputy Ardoin conducted the test improperly.
HGN tests are admissible as evidence of intoxication when the proper foundation has been laid. State v. Garris, 603 So.2d 277 (La.App. 2nd Cir.1992), writ denied, 607 So.2d 564 (La.1992); State v. Armstrong, supra. A proper foundation is laid when a showing has been made that the officer who administered the test was trained in the procedure, was certified in its administration, and that the procedure was properly administered. State v. Garris, supra; State v. Armstrong, supra.
In Armstrong, a proper foundation was laid when the officer who administered the HGN test testified that he had been trained and certified by his department in administering the test. The officer also described the manner in which the test was administered, thus demonstrating that it was properly conducted. State v. Armstrong, supra. A proper foundation for the admissibility of the HGN test was laid in Garris when the officer testified as to his training and experience in conducting the test. While the officer did not testify that he was certified to administer the test, the record indicated that he was qualified to do so. State v. Garris, supra.
In the instant case, Deputy Ardoin, who administered the HGN test, testified that he received training in the form of a 40-hour class by the Louisiana State Troopers and that he received certification which was current and in effect at the time he administered the HGN test to the defendant. Deputy Ardoin explained in detail how the HGN test is generally conducted and how determinations are made once the test is conducted. On cross-examination, Deputy Ardoin went into further detail regarding the administration of the test to the defendant. When asked by defense counsel whether the subject is required to cover one eye while taking the HGN test, Deputy Ardoin explained that you must watch both eyes at once and that requiring the subject to cover one eye would be incorrect according to training received through the state police. Nothing in the record contradicts Deputy Ardoin's explanation.
Based on Deputy Ardoin's testimony regarding his training, certification, and manner of conducting the HGN test, we find that a proper foundation was laid for the admissibility of the test results. The defendant's claim that the results were skewered because of medication that he was taking has no bearing on the admissibility of the HGN test results. Testimony regarding other causes of nystagmus would bear on the weight to be accorded the results of the HGN test. However, even if the defendant was taking medication as claimed, his own pharmacology expert testified that adverse effects, such as nystagmus, occur in less than one percent of those who take the prescribed medication. Nothing in the record suggests that the defendant experienced any side *727 effects from medication he may have been taking at the time of the accident.
We find no merit in this assignment of error.

MOTION TO QUASH
In the eighth assignment of error, the defendant first asserts that the trial court erred in denying his motion to quash which challenged the use of the prior 1989 DWI conviction as a predicate for the charge of DWI-3rd. Although the defendant assigned as error the denial of the motion to quash, the defendant neither briefed nor argued the assignment. Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2nd Cir.1989), writ denied, 558 So.2d 1123 (La.1990). As such, we consider the assignment of error regarding the denial of the motion to quash abandoned.
In the eighth assignment of error, the defendant also asserts that the trial court erred in relying upon erroneous and incomplete records of prior offenses offered by the state as predicates for the DWI-3rd charge. The defendant argues that both the 1989 and 1994 DWI convictions were dismissed pursuant to La. C.Cr.P. art. 894(B) and cannot be used as predicate offenses for the DWI-3rd charge.
The state introduced into evidence both the minutes from the defendant's 1989 and 1994 convictions in Shreveport City Court and the Boykin transcripts of those proceedings which showed that the defendant had entered guilty pleas to DWI charges on December 15, 1989 and on September 29, 1994. The defendant also introduced minutes from the same proceedings which indicated that the convictions had been dismissed pursuant to La.C.Cr.P. art. 894(B).
La.C.Cr.P. art. 894(B) provides, in relevant part:
The dismissal of the prosecution shall have the same effect as an acquittal, except that the conviction may be considered as a first offense and provide the basis for subsequent prosecution of the party as a multiple offender.
Dismissal of prosecution under La.C.Cr.P. art. 894(B) does not exclude the consideration of that conviction as the basis for later charging a defendant as a multiple offender. State v. Rose, 609 So.2d 1113 (La.App. 2nd Cir.1992), writ denied, 614 So.2d 77 (La.1993). See also State v. EDB, 26,190 (La.App. 2nd Cir. 1/24/94), 638 So.2d 1108.
Although the defendant's 1989 and 1994 convictions may have been dismissed pursuant to La.C.Cr.P. art. 894(B), we find that the prior convictions appropriately provide a basis for the DWI-3rd charge in this matter.
This assignment of error lacks merit.

WITNESS CREDIBILITY
In the ninth assignment of error, the defendant asserts that the trial court erred in finding credible the state's primary witness, Deputy Ardoin. The defendant argues that Deputy Ardoin's testimony was directly opposed to the testimony of other witnesses and to his own records taken contemporaneously with the arrest. The defendant argues that the serious inaccuracies in Deputy Ardoin's testimony require that it be discarded as unbelievable.
Determination of credibility of witnesses is within the sound discretion of the trial court, and, like all questions of fact, is entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938 (La.1984). Furthermore, we have previously determined that the court of appeal's authority to review questions of fact in criminal cases is limited to sufficiency of the evidence evaluations and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, *728 § 10(B); State v. Butler, 30,798 (La.App. 2nd Cir. 6/24/98), 714 So.2d 877. It is the function of the trier of fact to assess credibility and resolve conflicting testimony, and where the trier of fact has made a rational decision, it should not be disturbed on appeal. State v. Butler, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact is sufficient support for the requisite factual conclusion. State v. Thomas, 30,490 (La.App. 2nd Cir. 4/8/98), 711 So.2d 808.
The defendant points to various inconsistencies in Deputy Ardoin's testimony at trial and records kept by him contemporaneous with the investigation and arrest to establish a pattern of inaccuracies. Included among the purported inaccuracies are Deputy Ardoin's explanation of when and why the arrest was made, his testimony as to the sequence of the field sobriety tests administered to the defendant, and Deputy Ardoin's failure to record whether the defendant was wearing contact lenses.
None of these "inaccuracies" are such as to render Deputy Ardoin's testimony suspect. For example, Deputy Ardoin testified that he arrested the defendant at approximately 6:00 a.m. for DWI. He also testified that the arrest was made after conducting several field sobriety tests. The Louisiana Uniform DWI Citation form indicates that the defendant was arrested upon reasonable grounds to believe the offense had been committed because the defendant was involved in an accident and seemed to "have difficulties maintaining his balance." This latter determination was obviously based upon the defendant's dismal performance on the field sobriety tests. Inaccuracies or misstatements regarding the order in which the field sobriety tests were administered and the failure to note whether the defendant wore contacts are not substantive and do not call into question Deputy Ardoin's credibility.
Another "inaccuracy" pointed out by the defendant is Deputy Ardoin's testimony that he attended an administrative hearing concerning the defendant's driving privileges when records from that hearing indicated that Deputy Ardoin was not present. This inaccuracy in Deputy Ardoin's testimony was a factor to be considered by the trial court in weighing credibility and does not rise to such a level as to render unbelievable the entirety of the testimony.
The defendant also challenges Deputy Ardoin's credibility on the basis that his testimony that the defendant smelled of alcohol, slurred his speech, and had difficulty maintaining his balance is contradicted by the testimony of other witnesses who also observed the defendant. The defendant points to the testimony of John Bell who was with the defendant from 6:00 until 8:00 p.m. on the night prior to the accident and who testified that the defendant refused offers of alcoholic beverages at that time and that the defendant was "very conscious of drinking and driving." The defendant also points to the testimony of Serena Keene, a waitress who served the defendant at a diner between 4:00 and 5:00 a.m. on the morning of the accident. Keene testified that she did not notice an odor of alcohol about the defendant and that he was not staggering, stumbling, or falling down. The defendant also points out that John McMellon, Jr., did not detect an odor of alcohol about the defendant and did not have difficulty understanding the defendant.
As discussed above, it is the duty of the trial court to assess and weigh conflicting testimony. Obviously, the trial court rejected the testimony offered on behalf of the defendant. The trial court, upon assessing and weighing the evidence presented, determined that the evidence offered by Deputy Ardoin regarding the defendant's intoxication was more credible. This determination is within the trier of fact's discretion. We perceive no basis for disturbing this finding.
This assignment of error lacks merit.

*729 ERROR PATENT
In this final assignment of error, the defendant requests review of the record for errors patent. This request is unnecessary since review for errors patent is made automatically in all criminal cases. State v. Bryant, 29,344 (La.App. 2nd Cir. 5/7/97), 694 So.2d 556.
Our error patent review disclosed that the trial court failed to inform the defendant of the prescriptive period for post-conviction relief, as required by La. C.Cr.P. art. 930.8. The trial court informed the defendant that the prescriptive period for post-conviction relief is simply "three years." This is a common error. This defect has no bearing on the sentence and is not grounds to reverse the sentence or remand for re-sentencing. La.C.Cr.P. arts. 921, 930.8(C); State v. Cox, 604 So.2d 189 (La.App. 2nd cir.1992); State v. Mock, 602 So.2d 776 (La.App. 2nd Cir.1992). The three-year prescriptive period does not begin to run until the judgment is final under La.C.Cr.P. art. 914 or 922. Thus, prescription has not yet begun to run. State v. Harvey, 26,613 (La.App. 2nd Cir. 1/25/95), 649 So.2d 783, writ denied, 95,0430, 95,0625 (La.6/30/95), 657 So.2d 1026 and 1028.; State v. Mock, supra.
Therefore, we direct the trial court to send appropriate written notice to the defendant within ten days of the rendition of this opinion and to file proof of the defendant's receipt of such notice in the record of these proceedings. State v. Mock, supra; State v. Smith, 600 So.2d 745 (La. App. 2nd Cir.1992).

DECREE
For the reasons set forth above, the defendant's conviction and sentence are affirmed.
AFFIRMED.