I JOAN BERNARD ARMSTRONG, Judge.

STATEMENT OF THE CASE

On September 3, 2002 the defendant, Bryan Hosner, was charged with DWI, third offense, a charge to which he subsequently pled not guilty. On March 18, 2003 the court heard and granted his motion to suppress the evidence. The State now comes before this court seeking relief from this ruling. The State supplemented its application with the March 18 transcript, and the defendant has responded. For the following reasons we reverse the ruling of the trial court.

STATEMENT OF THE FACTS

On the evening of April 5, 2002 police officers set up a DWI checkpoint at the corner of Basin and St. Peter Streets. Pursuant to this checkpoint the officers stopped every fifth car. Sometime after 9:00 p.m. they stopped the defendant, who they discovered was not wearing his seat belt. Officer Battaglia, who conducted the *415 stop, testified that in response to his request for the defendant’s driver’s license, registration, and insurance card, the defendant admitted he did not have his driver’s license with him. The officer soon learned the defendant’s license had been suspended. In addition, the officer could smell alcohol on the defendant’s breath. The officer ordered the defendant out of the car, and when the defendant complied lathe officer noticed the defendant had trouble keeping his balance and supported himself by leaning against his car. The officer conducted a field sobriety test, which consisted of various tests including a horizontal gaze and nystagmus test, heel-to-toe walking exercises, and a one-legged stand. The defendant performed poorly on all these tests, and the officer then advised him he was under arrest, advised him of his rights relating to a chemical test, and advised him of his Miranda rights.
Officer Battaglia testified that at first the defendant agreed to submit to an In-toxilizer, and he apparently tried more than once to take the breath test, but the machine was not functioning properly due to the fact that the officers had set up the checkpoint too close to a radio tower, which was interfering with the signal the portable machine needed to send to the main machine elsewhere. He indicated that he and the defendant had filled out a waiver form in connection with the Intoxi-lizer, but when it became apparent that the machine was malfunctioning, that paperwork was destroyed. He testified that another set was completed a few hours later, after the defendant had changed his mind and declined to submit to another Intoxilizer test. The officer admitted that although he advised the defendant of his rights after the defendant performed so poorly on the field sobriety test, he did not reduce this fact to writing. He also indicated that another officer' completed a questionnaire with the defendant, but he insisted this questionnaire was completed after he had advised the defendant of his Miranda rights. The officer testified that he was initially instructed by his supervisor to arrest the defendant only for driving with a suspended license and failure to use a seat belt, apparently awaiting the result of the Intoxilizer test, but when the machine malfunctioned, he also arrested lathe defendant for DWI based upon the defendant’s performance on the field sobriety test.

DISCUSSION

It appears the trial court suppressed the evidence in this case because it believed the officer should have advised the defendant of his rights prior to giving him the field sobriety test. However, as noted by the State in its application, an officer does not have to advise a suspect of any rights prior to conducting a field sobriety test in order to render the results of the test admissible at trial. See State v. Badon, 401 So.2d 1178 (La.1981). As noted by the court in State v. Finch, 31,888, p. 12 (La.App. 2 Cir.5/5/99), 733 So.2d 716, 725:
Furthermore, police officers may testify with regard to the results of field sobriety tests in the absence of proof that the defendant was first advised of his Miranda rights. State v. Badon, 401 So.2d 1178 (La.1981). As discussed in State v. Badon, supra, field sobriety tests are physical evidence and do not activate the protections afforded by the Fifth Amendment. Such tests are based on the relationship between intoxication and the loss of coordination caused by intoxication and do not force test subjects to betray their subjective knowledge through communication. Id. Therefore, we find that the results of the field sobriety tests were properly admitted even though the defendant was not *416 read the Miranda rights prior to the tests.
See also State v. Beeland, 487 So.2d 703 (La.App. 5 Cir.1986).
Here, Officer Battaglia testified that he conducted the field sobriety test after he detected the odor of alcohol on the defendant’s breath and observed the defendant had trouble standing. He testified that he did not advise the defendant of any rights until after the defendant had failed the test. Thus, the officer was not obligated to advise the defendant of his rights prior to conducting the field sobriety |4test. Therefore, the trial court erred by suppressing the results of the field sobriety test.
In his response, the defendant emphasizes the fact that the Intoxilizer form was filled out approximately two hours after he was stopped. Officer Battaglia explained this form was the second form to be completed, after the defendant refused to take the Intoxilizer test again. In any event, because the defendant ultimately refused to take the test, there is no result to be suppressed, and the fact that this form was filled out two hours after the defendant was stopped has no bearing on the admissibility of the results of the field sobriety test, which was conducted shortly after the defendant was stopped.
The final piece of evidence is the questionnaire completed by another officer. Unlike the field sobriety test, which is not testimonial in nature, this questionnaire contained some answers which incriminate the defendant. However, Officer Battaglia repeatedly testified that this questionnaire was completed after he had read the defendant his Miranda rights. At no point did the trial court indicate he did not believe the officer’s testimony. As such, we find that this evidence would also be admissible. See State v. Vigne, 2001-2940 (La.6/21/02), 820 So.2d 533; State v. Jones, 2002-1171 (La.App. 4 Cir. 6/26/02), 822 So.2d 205.
For the foregoing reasons, this writ is granted, the ruling of the trial court is reversed, and the case remanded for further proceedings.
WRIT GRANTED; REVERSED AND REMANDED.