| ¶ ROLAND L. BELSOME, Judge.
STATEMENT OF THE CASE
On September 9, 2003 the State filed a bill of information charging the appellant Brandon Cheatham with one count of possession of cocaine, a violation of La. R.S. 40:967. He was arraigned and entered a not guilty plea on September 19, 2003. On October 10, 2003, after hearing testimony, the trial court denied the appellant’s motion to suppress evidence. On October 17, 2003 the appellant withdrew his former plea of not guilty and entered a plea of guilty, reserving his right to appeal the adverse ruling on the motion to suppress the evidence pursuant to State v. Crosby, 338 So.2d 584 (La.1976).
STATEMENT OF THE FACTS
On August 26, 2003 Officers Ernest Luster and Channing Branch of the N.O.P.D. Second District narcotics squad were on pro-active patrol in the Hollygrove area of New Orleans. The officers testified to stopping a vehicle at the intersection of Leonidas and Palm Streets because the driver was not wearing a seat belt. The appellant was the only other occupant of the vehicle; he was seated in the front passenger seat.
The officers obtained identification from both occupants and ran their names through the Motion inquiry system. The computer reflected an outstanding warrant from Harahan for the appellant for a “miscellaneous violation.” The officers contend that after confirming the warrant’s validity, they removed the appellant from the car and handcuffed his arms behind his back.
Once handcuffed Officer Branch conducted a pat down search of the appellant. Officer Branch found over $1800 in cash in the appellant’s front pocket. Officer Branch testified that he removed the money from the appellant’s pocket and began counting it. At that point, according to Officer Branch, the appellant, while handcuffed, fled down Palm Street, turned onto another street and then hopped a fence into a yard, where the officers were able to apprehend him.
*139 When the appellant was returned to the police vehicle, Officer Luster resumed the interrupted search. Officer Luster discovered a clear plastic bag containing approximately forty-three rock-like substances in the appellant’s back pocket, which were later identified as crack cocaine. The appellant was arrested for possession with the intent to distribute cocaine.
At the motion to suppress hearing, Officer Luster testified that even though the sole basis for the stop of the vehicle was because the driver was not wearing a seat belt, no citation was issued to the driver, nor was he arrested. Officer Luster could not recall the driver’s name and admitted that the appellant’s name was run through the computer before the driver’s name.
Despite the fact that Officer Luster stated he was in the police vehicle doing a computer check on the driver while his partner performed the initial pat down, he claimed that once Officer Branch removed the currency from the appellant’s pocket, it was counted and the appellant was made to sign a receipt for the money. This signing was supposedly done while the appellant was handcuffed. Officer Luster was unable to produce the receipt at the hearing. According to Officer Luster, it was after the appellant signed or tried to sign the receipt that he began to run.
Officer Branch, who placed the handcuffs on the appellant and conducted the initial pat down search, denied that the appellant was given a receipt for the currency because the money was evidence. He stated that he stopped the pat down to count the money. He further stated that while the money was being counted the handcuffed appellant “broke out running.” His account of the chase and apprehension of the appellant was consistent with Officer Luster’s version of those events. Once the appellant was apprehended the earlier search was resumed. It was at that time that the crack cocaine was discovered and seized by Officer Luster.
DISCUSSION
The sole issue on appeal is whether the trial court erred when it denied the motion to suppress the evidence. The appellant in his brief argues that the officers in this case stopped the vehicle in which he was an occupant solely on a pretext. The United States Supreme Court has held that a stop for a traffic violation, even if done with another subjective motive, is still valid if the traffic violation actually occurred. See Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), discussed at length in State v. Shapiro, 98-1949, pp. 6-7 (La.App. 4 Cir. 12/29/99), 751 So.2d 337, 340-41.
There was nothing presented at the hearing to refute the fact that the driver was not wearing his seat belt. Further, a passenger of a vehicle stopped for a traffic violation can be ordered from the vehicle for the safety of the officers. See Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). Also in State v. Landry, 588 So.2d 345 (La.1991), the court found that simply asking the passenger for identification after he had been removed from the vehicle was reasonable in light of the overall circumstances.
Nevertheless, the appellant asserts that the officers here gave no testimony to indicate that they suspected the driver or appellant of criminal activity and could not give an explanation for their decision to run the appellant’s name through the computer, especially before they ran that of the driver.
The appellant also argues that the testimony of the officers was contradictory and improbable, in particular the testimony that, while handcuffed behind his back, he allegedly signed a receipt and then ran two blocks. He notes that the officers testified *140 that the currency was seized and was being counted by one officer while the other was still in the police vehicle running the name of the driver.
However, the appellant does not contend in his brief that there was not an outstanding warrant for his arrest, nor did he make that allegation at the motion hearing. Instead, he contends that the trial court should not have followed State v. Hill, 97-2551 (La.11/16/98), 725 So.2d 1282, because to do so allowed the police in this case to circumvent the purpose of the exclusionary rule, which is to deter police misconduct.
At the hearing the trial judge made it clear that, even if he believed that the stop of the vehicle was not well-founded, he had no choice but to uphold the search pursuant to the Louisiana Supreme Court’s decision in Hill. In Hill, two police officers received a general tip of narcotics activity. The officers observed two men, one of whom was the appellant, standing in front of an abandoned building. When the men saw the officers, they began to walk away in different directions. The officers initiated a conversation with the appellant and his companion and frisked them for weapons, finding nothing. While the field interview was proceeding, the computer check of Hill’s name revealed two outstanding warrants. He was arrested on the warrants, and the subsequent search incidental to arrest resulted in the seizure of a crack pipe.
The trial court granted the appellant’s motion to suppress the crack pipe, and this Court affirmed, finding that, for the arrest to be valid, the initial detention must also be valid. Because there was no reasonable suspicion to stop the appellant, the ensuing arrest pursuant to the outstanding warrants was unlawful. State v. Hill, 97-1012 (La.App. 4 Cir. 9/17/97), 700 So.2d 551.
On review, the Supreme Court reversed, finding that the “attenuation doctrine” exception to the exclusionary rule applied. The court relied extensively on Brown v. Illinois, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, in which the court enunciated a multi-factor test to consider whether evidence impermissibly seized should be suppressed. The court noted:
The primary considerations under Brown are: (1) the temporal proximity of the illegality and the acquisition of the evidence to which instant objection is made; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. Brown, 422 U.S. at 603, 95 S.Ct. at 2262, 45 L.Ed.2d at 427; State v. Scott, 389 So.2d at 1288. Additionally, in considering whether the evidence should be suppressed, Brown requires us to weigh each consideration in light of the policies behind the Fourth Amendment. [Footnote omitted.]
Hill, pp. 3-4, 725 So.2d at 1284. The court then applied the Brown factors, conceding that while there was no temporal break, the computer check which showed the outstanding arrest warrant was an intervening circumstance sufficient to dissipate the taint of the initial impermissible stop. The court specifically rejected a “but for” causation test which would find the evidence inadmissible because the police learned the appellant’s name only during the illegal stop.
The court also analyzed the last factor under Brown, the flagrancy of the police misconduct. The court stated:
To this end, we note that the testimony of officers Elsensohn and McCabe at the suppression hearing did not reveal a “quality of purposefulness” in their conduct, which consisted of performing a Terry stop and frisk on an unknown individual whom they observed standing about on a street corner; nor is there any indication that the officers’ conduct *141 was “calculated to cause surprise, fright, or confusion.” Brown, 422 U.S. at 605, 95 S.Ct. at 2262, 45 L.Ed.2d at 428. Thus, even if the Terry stop exceeded the officers’ authority, the police conduct was not particularly egregious and did not amount to a flagrant abuse of police power. To the contrary, under the particular facts of this case, we ... find that, once the officers knew of the outstanding arrest warrants, they would have been derelict in their duty not to arrest the appellant. The officers’ conduct in this case does not rise to the level of flagrant misconduct within the meaning of the jurisprudence, yet the gravity of the government’s interest in apprehending wanted individuals is overpowering. Because the exclusionary rule is designed to prevent the use of evidence tainted by flagrant police misconduct in order to deter law enforcement practices volatile of the Fourth Amendment, we find that considering the circumstances of this case, suppression of the disputed evidence would not serve the policies behind the exclusionary rule, nor contravene the protections provided by the Fourth Amendment.
Hill, pp. 9-10, 725 So.2d at 1287.
As discussed above, the court in Hill acknowledged that the purpose of the exclusionary rule, to deter flagrant police misconduct, is a relevant consideration. In the instant case, the testimony to a significant degree certainly borders on a situation where it can be argued that the officers were engaging in a practice designed to circumvent Fourth Amendment principles.
The officers testified that they were narcotics officers on pro-active patrol who elected to stop a vehicle solely because the driver was not wearing a seat belt. Yet, they were not concerned about the driver at all if the Court accepts the testimony of Officer Luster. He claimed that they ran the passenger’s name through the computer before that of the driver.
It is certainly possible that the trial court could have concluded that the narcotics officers in this case were consciously choosing to manipulate the most minor of traffic offenses by the unknown driver into a confrontation wherein they could possibly find some evidence of criminal activity, especially in light of the inconsistencies in the officers’ testimony.
However, the determination of credibility of witnesses is within the sound discretion of the trial court, and, like all questions of fact, is entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State v. Finch, 31,888 (La.App. 2 Cir. 5/5/99), 733 So.2d 716 citing State v. Vessell, 450 So.2d 938 (La.1984). This courts authority to review questions of fact in criminal cases is limited to sufficiency of the evidence evaluations and does not extend to credibility determinations made by the trier of fact. Finch citing La. Const. art. 5, § 10(B); State v. Butler, 30,798 (La.App. 2 Cir. 6/24/98), 714 So.2d 877.
“In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact is sufficient support for the requisite factual conclusion.” Finch citing State v. Thomas, 30,490 (La.App. 2 Cir. 4/8/98), 711 So.2d 808. We must assume that the Trial Court found at least one of the officers testimony as credible when deciding to deny the motion to suppress. The Trial Court never gave any indication that it doubted that the officers observed the seat belt violation, which initiated the stop that ultimately led to the discovery of an outstanding warrant for the appellant’s arrest. The *142 search subject to that arrest resulted in the discovery and seized narcotics.
Thus, considering the sanctioning of pretext traffic stops by the court in Whren, it appears that the officers in this case legitimately combined the stop of the vehicle for a minor traffic violation[1] with the attenuation doctrine followed in Hill to seize the evidence in this case.
CONCLUSION
The trial court is vested with great discretion when ruling on a motion to suppress. State v. Scull, 93-2360, p. 9 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239, 1245. Considering Whren and Hill, it appears that the Trial Court did not err in denying the motion to suppress the evidence. Therefore, the Trial Court’s ruling is hereby affirmed.

. Even if the trial court had not believed that the officers saw a seat belt violation, as long as the warrant existed, Hill would apply. See State v. Perez, 99-2063 (La.App. 4 Cir. 9/15/99), 744 So.2d 173.